**William McKNIGHT**

v.

**William WEBSTER, Director, Federal Bureau of Investigation, B. Civiletti, United States Attorney General, Norman A. Carlson, Director, Federal Bureau of Prisons, Joseph F. O'Neill, Commissioner of the Philadelphia Police Department.**

**William McKNIGHT**

v.

**William WEBSTER, Director, Federal Bureau of Investigation, B. Civiletti, United States Attorney General, Norman A. Carlson, Director, Federal Bureau of Prisons, Chief of Police, Middletown Township, Bucks County, Pennsylvania.**

Civ. A. Nos. 80–1280, 80–1267.

United States District Court,
E. D. Pennsylvania.

Oct. 23, 1980.

William McKnight, pro se.

Susan Dein Bricklin, Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

## OPINION

LUONGO, District Judge.

Plaintiff in these *pro se* actions is a federal prisoner who seeks to have expunged from records maintained by the FBI and local police notations of certain of his arrests by local law enforcement authorities. McKnight contends that he is entitled to expunction on the ground that some of the challenged arrests were in violation of his constitutional rights, and others did not re-

sult in a judgment of conviction against him. Defendants are federal officials charged by Congress with the duty to maintain records of arrest and the police chiefs for the localities in which the arrests occurred. The federal defendants move for summary judgment on the ground that they have fulfilled whatever duty they may owe to McKnight by seeking accurate information from the local police departments which forwarded the records of McKnight's arrests.

### A. *McKnight's Case Against the Federal Defendants*

McKnight petitions this court to order the federal defendants to expunge from their criminal arrest records all notations regarding arrests on charges on which he was subsequently acquitted; arrests on charges which were never prosecuted; and arrests relating to charges on which McKnight was later discharged by a writ of habeas corpus. The threshold question is whether McKnight's petition to expunge states a claim upon which relief can be granted.

■ Unquestionably, a federal court has power to order expunction of an arrest record as part of its inherent equitable power to fashion a remedy to redress a deprivation of constitutional rights. For instance, where there is an allegation that the Federal Bureau of Investigation (FBI) engaged in illegal surveillance, *e. g., Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975), or where it is alleged that the police made dragnet arrests without probable cause as a means of harassment, *e. g., Hughes v. Rizzo*, 282 F.Supp. 881 (E.D.Pa.1968), an action will lie to expunge the records in the possession of the defendant law enforcement agencies. Here, in contrast, there is no allegation that the FBI violated McKnight's rights in coming into possession of the information sought to be expunged, and there is no

ongoing litigation over whether the FBI itself engaged in any improprieties with respect to McKnight. Rather, McKnight brings this suit to expunge his record as a separate cause of action, and he contends that a petition to expunge, standing alone, states a claim on which relief can be granted.

■ I am satisfied that McKnight's petition does state a claim upon which relief can be granted. The United States Court of Appeals for the District of Columbia Circuit has held that under 28 U.S.C. § 534, the statute authorizing maintenance of criminal identification records by the Attorney General and his designates, the FBI has a limited duty to individuals on whom records are maintained, to keep records "reliably," and to avoid "unnecessary harm" to such individuals. *Menard v. Saxbe*, 498 F.2d 1017, 1026 (D.C.Cir.1974); *accord, Tarlton v. Saxbe*, 507 F.2d 1116, 1122 (D.C.Cir. 1974).[1] I have jurisdiction under 28 U.S.C. § 1331(a) over a claim to enforce this duty. *Tarlton*, 507 F.2d at 1120. McKnight also contends that he has a direct cause of action under the Constitution. *See Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court in *Menard* declined to recognize a *Bivens* action against the FBI for maintaining incomplete records on the ground that such an action is properly brought against the state and local officials who were the source of the FBI's information. 498 F.2d at 1025. I agree that where the only allegation against a federal agency is that it holds inaccurate or constitutionally tainted information about an individual's criminal record, and it was not directly involved in illegal activity generating the challenged information, there is no direct cause of action against it under the Constitution.

---

1. The *Menard* and *Tarlton* cases specifically addressed the obligations of the FBI. Plainly, however, a similar duty may be attributed to the other federal defendants in this case, since 28 U.S.C. § 534 refers to the duty of the Attorney General, and anyone to whom he delegates record–keeping authority. It is plain from the record that the Attorney General does not maintain any records other than those kept by the FBI. Moreover, it appears that if the Bureau of Prisons has records of McKnight's arrests, these records also come from the FBI. Accordingly, although all of the federal defendants are subject to § 534, my discussion will make reference to the FBI.

██ The extent of the FBI's duty under § 534 to individuals on whom it maintains records is not clearly defined. At a minimum, the FBI is under an obligation to correct inaccuracies in its records when corrective information is supplied to it by local law enforcement agencies. *Menard, supra,* 498 F.2d at 1028. In the instant case, however, there is no allegation that the FBI possesses correct information but nonetheless refuses to correct its records. Rather, McKnight's complaint is that local police officials have failed to forward corrective information to the FBI.[2] When the accuracy of the FBI record has been challenged, the FBI also has an obligation to forward requests for corrected information to local law enforcement agencies. *Tarlton v. Saxbe,* 407 F.Supp. 1083, 1086 (D.D.C.1976) (*after remand*). Defendants have submitted the affidavit of Special Agent Melvin D. Mercer, Jr., of the FBI. Mercer states that after reviewing McKnight's complaint he forwarded requests for correct information to the local law enforcement agencies which originally reported McKnight's arrests. Copies of Mercer's letters to the contributing agencies were attached as an exhibit. Accordingly, the FBI cannot be charged with failing to attempt to verify the accuracy of its records once it was notified that the records may be incomplete.

The real problem in the instant case is that the local agencies have not responded to the FBI's requests. No federal court has yet held that the FBI's duty to ensure the accuracy of its arrest files extends so far as to require that the FBI expunge from its records notations of arrests for which no disposition is recorded, or to expunge its records when the local contributing agency fails to respond to a request for further information. It is true that under the applicable federal regulations, local law enforcement agencies contributing arrest data

are required to report dispositions of arrests within ninety days. 28 C.F.R. § 20.37. It is also true that the FBI has the authority to suspend a contributing agency from participation in the criminal identification program for failure to comply with the requirements of the program. 28 C.F.R. § 20.38. It does not follow, however, that the FBI should in every case be ordered to expunge its records when a local agency does not comply by forwarding dispositions. The FBI may be well advised to police contributing agencies more closely, particularly where, as here, they ignore a request from the Bureau for more complete information. I also note that the Bureau might make more frequent use of its power to impose sanctions, which it has seldom done, on recalcitrant local agencies. *Menard, supra,* 498 F.2d at 1028, n.41. But I am not inclined to establish a rigid rule which may impede the Bureau in fulfilling the mandate of Congress. As the district court stated in *Tarlton*: "[b]alancing personal rights with the valid needs of the criminal justice system, the Court cannot order the wholesale expungement of or non–dissemination of criminal records not meeting an arbitrary temporal yardstick. The inadvertence or negligence of one criminal justice agency should not be compounded to provide post–factum 'pardons' or expungement for guilty offenders. Nor should one agency's careless actions work to impede the legitimate efforts of other criminal justice officials . . . ." 407 F.Supp. at 1089.

The district court in *Tarlton* had before it detailed evidence about the practicability of requiring the FBI to review and periodically revise its records. In a well–reasoned opinion, the court refused to go any further than to require the FBI to seek corrective information when the accuracy of its records is challenged. McKnight here has submitted no new data which would justify extending the duty of the FBI in this area.

---

**2.** McKnight has forwarded to the FBI a copy of an opinion and order by a member of this court directing McKnight's discharge on certain charges on a writ of habeas corpus. As the FBI points out, it is impossible to discern from the opinion which of McKnight's charges were challenged by the writ, or what was the basis for issuing the writ. Under these circumstances, the FBI cannot be said to be in possession of information which gives it notice that its records are in error.

Accordingly, since the federal defendants have submitted uncontroverted affidavits and exhibits establishing that they have done all that is required of them under existing law, the federal defendants' motion for summary judgment will be granted in both actions.

### B. *McKnight's Case Against the Municipal Defendants*

McKnight has also named as defendants the chiefs of police of Philadelphia, and of Middletown Township, Bucks County. McKnight moves for a default judgment against them on the ground that they have failed to answer the complaint.

█ With respect to McKnight's complaint against Joseph O'Neill, Chief of the Philadelphia Police Department, McKnight named him as defendant in an individual capacity but supplied no address other than police headquarters. The record reflects that when service was attempted, O'Neill was no longer chief of police, and the incumbent chief of police refused to accept service inasmuch as the complaint named only Joseph O'Neill as defendant. McKnight has made no further attempt to obtain service upon either O'Neill or his successor, and neither is, therefore, properly before the court.

█ With respect to McKnight's complaint against the police chief of Middletown township, when McKnight's petition for default judgment was filed, Middletown township sought an extension of time within which to answer. The township took no action while awaiting the court's response, and finally wrote to the court asking whether it had permission to file an answer. Although technically the township's answer was untimely, inasmuch as there was no prejudice to McKnight, I directed that the township answer the complaint. Middletown township's answer has now been docketed with the clerk of court, and McKnight's motion for a default judgment will be denied.