**SONY CORPORATION,**
Plaintiff-Appellee,

v.

**ELM STATE ELECTRONICS, INC. and Richard Gurton, Defendants-Appellants.**

**No. 1421, Docket 86–7217.**

United States Court of Appeals,
Second Circuit.

Argued May 23, 1986.

Decided Sept. 11, 1986.

Thomas D. Clifford, Hartford, Conn. (Skelley, Clifford, Vinkels, Williams and Rottner, Hartford, Conn., of counsel), for defendants-appellants.

Ned W. Branthover, New York City (William E. Pelton, Eslinger & Pelton, New York City, of counsel), for plaintiff-appellee.

Before MANSFIELD, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a default judgment entered by the United States District Court for the District of Connecticut, Daly, C.J., in favor of Sony Corporation (Sony) on its trademark infringement claim against Elm State Electronics, Inc. and Richard Gurton, Elm State's president and sole stockholder, for $17,121.20, trebled to $51,363.60, plus attorneys' fees and expenses of $18,641.85, costs and pre-judgment interest. We refer to the defendants collectively as "Elm State." We affirm the denial of Elm State's motion to reopen the default but vacate the judgment and remand for further proceedings on the question of damages.

## BACKGROUND

Sony, a Japanese corporation, manufactures SG–613 semi-conductors which it sells under a registered Sony trademark. On February 6, 1985, Sony notified Elm State that Elm State was selling counterfeit Sony SG–613 semi-conductors. At that time, Elm State promised to stop making such sales. On April 22, 1985, after learning that sales of the counterfeit products were continuing, Sony commenced this trademark infringement action and obtained a temporary restraining order.

On April 23, 1985, Sony served the summons and complaint on Elm State, together with an order temporarily restraining Elm State from further infringement of Sony's trademarks and permitting the seizure from Elm State of 4,050 counterfeit Sony SG–613 semi-conductors. The order granted accelerated discovery, directing Elm State to appear immediately for a deposition. It also ordered Elm State to appear in court on May 2, 1985, to show cause why a preliminary injunction should not issue.

On May 8, 1985, Sony filed and served the First Amended Complaint adding Gurton as a defendant. Elm State's answer was, therefore, due by May 20, 1985; Gurton's answer was due by May 28, 1985. Fed.R.Civ.P. 12(a), 15(a) and 6(a).

The hearing originally scheduled for May 2, 1985, was postponed to May 23, 1985, by stipulation. On May 23, 1985, Elm State failed to appear at the hearing on Sony's motion for a preliminary injunction. The court held that Sony had met its burden of proof and issued the preliminary injunction from the bench.

On June 4, 1985, Sony moved for the clerk to enter a default against each defendant. On June 10, 1985, three weeks after its May 20 deadline and almost two weeks after Gurton's deadline, Elm State filed an answer with the district court clerk in New Haven, rather than in Bridgeport where the case was pending.

On June 12, 1985, the clerk of the court entered a default against Elm State for failure to file a timely answer or otherwise

defend. *See* Fed.R.Civ.P. 55(a). Elm State filed a motion to reopen the default. The motion initially was granted on June 27, 1985, but, after reconsideration, the court vacated its ruling and denied the motion on July 1, 1985, without prejudice to a subsequent showing by Elm State of "good cause" under Fed.R.Civ.P. 55(c).

On July 19, 1985, Elm State made another motion, seeking to set aside the default. The motion was denied on August 12, 1985, and Sony moved on August 20, 1985, for entry of a default judgment.

On August 21, 1985, Elm State moved for reconsideration of the court's refusal to set aside the default. In support of this motion, Elm State submitted affidavits which were held to be insufficient, and on August 29, 1985, Elm State's motion for reconsideration was denied.

A hearing on damages was held December 18, 1985. At the hearing, Elm State again asked for reconsideration of the court's refusal to set aside the default. Over Sony's objection, the court heard argument on the request for reconsideration but then denied the request. During the hearing, Elm State did not submit any evidence to rebut Sony's proof of damages. Instead, Elm State requested and was granted an extension of time until January 13, 1986, to submit further papers on the damages question.

On January 10, 1986, Elm State filed a brief and an affidavit of Richard Gurton with invoices attached, responding to Sony's damages claim. The district court refused to consider Elm State's evidence and directed a final judgment which was entered on February 11, 1986, for damages, attorneys' fees and expenses, plus costs and pre-judgment interest. Defendants hired new counsel and this appeal followed.

## DISCUSSION

### 1. *Default*

Rule 12(a) of the Federal Rules of Civil Procedure establishes the time period for filing an answer and Rule 6(b) permits the court to grant an enlargement of time. Fed.R.Civ.P. 12(a); Fed.R.Civ.P. 6(b). Rule 6(b)(2) provides that a defendant who has missed a filing deadline must move the court to enlarge the time for filing and must demonstrate that the failure to file was the result of "excusable neglect." Fed.R.Civ.P. 6(b)(2); *see generally Traguth v. Zuck*, 710 F.2d 90, 93–94 (2d Cir.1983).

Notwithstanding the nominal requirement that the non-answering defendant demonstrate excusable neglect in order to prevail on a Rule 6(b) motion, district courts regularly exercise their discretion to deny technically valid motions for default. *See, e.g., Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981) (noting that 10 day delay in responding to amended complaint would not lead to default judgment); *Moriani v. Hunter*, 462 F.Supp. 353, 354–55 (S.D.N.Y. 1978) (21 day delay in filing answer where defendant's attorney mistakenly believed that defendant had not been served); *see also McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D.Pa.1980) (technical default where defendant sought extension of time to file answer but did not present answer to clerk to file while request for extension was pending; permission to file answer nevertheless granted because no showing of prejudice to plaintiff); *Dr. Ing. H.C.F. Porsche, AG v. Zim*, 481 F.Supp. 1247, 1248 n. 1 (N.D.Tex.1979) (answer filed 4 days after motion for default judgment filed, but no entry of default made by clerk; motion for default judgment denied). *But see United States v. York Construction Co.*, 25 F.R.D. 478, 479–80 (D.N.D. 1960) (motion for permission to file answer denied where defendant failed to establish excusable neglect). The district court implicitly granted a Rule 6(b) motion when it initially endorsed Elm State's original motion to reopen the default, noting that the motion was granted "since the answer was in fact filed prior to the entry of default." J.App. at 91.

In this case, the default was first entered by the court clerk pursuant to Rule 55(b)(1). Fed.R.Civ.P. 55(b)(1). In ruling on Elm State's motion to reopen the default, the district court followed Rule 55(c),

which vests the court with the discretion to reopen a default "[f]or good cause shown." Fed.R.Civ.P. 55(c); *see also Traguth*, 710 F.2d at 94.

The court applied the Rule 55(c) standard in its second ruling on the motion to reopen, when it stated in an endorsement that the motion was denied "without prejudice to refiling upon a showing of good cause under Fed.R.Civ.P. 55(c)." J.App. at 97.

In its decision on the new motion to set the default aside, the court implicitly applied the Rule 55(c) standard again, although the court referred to the Rule 6(b) standard, noting that Elm State's explanation for failing to file a timely answer or motion for extension of time did not constitute "excusable neglect." J.App. at 157. The court apparently believed that defendant must prove that its neglect in failing to file a timely answer was "excusable" under Rule 6(b) in order to establish "good cause" to reopen the default under Rule 55(c). Although the court was not compelled to take this strict a view of the seriousness of the original failure to file an answer, such a view was not an abuse of the court's discretion under Rule 55(c), as we explain below.

Determining the existence of good cause under Rule 55(c) here required consideration of whether Elm State's default was willful, whether setting the default aside would prejudice Sony and whether Elm State presented a meritorious defense. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981). In deciding whether to reopen the entry of default, the district court also could have considered whether the failure to file a timely answer was the result of a good faith mistake, *see Latini v. R.M. Dubin Corp.*, 90 F.Supp. 212, 215 (N.D.Ill. 1950) (defendant's good faith mistake regarding jurisdiction prevented entry of default judgment and justified enlargement of time to file answer); *Henry v. Metropolitan Life Insurance Co.*, 3 F.R.D. 142, 143–44 (W.D.Va.1942) (counsel's mistaken belief that answer had been filed and the hospitalization of counsel when case was removed from state to federal court caused court to "strain" its discretion and deny motion for judgment of default). In addition, the court could have considered whether the entry of default would lead to a harsh result or to the entry of a large money judgment. *See, e.g., Phillips v. Weiner*, 103 F.R.D. 177, 179, 182 (D.Me. 1984) (large sum of money involved militates against default judgment); *Horn v. Intelectron Corp.*, 294 F.Supp. 1153, 1154–55 (S.D.N.Y.1968) (motion for relief under both Rule 55(c) and Rule 60(b); default disfavored in matters involving large sum of money); *Henry*, 3 F.R.D. at 144 ("Matters involving such sums should not be determined by default judgments if it can reasonably be avoided...."). Moreover, the district court could have considered our strong preference for resolution of disputes on their merits, *see Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir.1957), and our preference for resolving doubts in favor of a trial on the merits, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981).

The district court failed explicitly to balance these factors against the competing interest in maintaining "an orderly efficient judicial system" in which default is a useful weapon "for enforcing compliance with the rules of procedure." 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Civil 2d § 2693 at 478. That failure did not constitute an abuse of discretion, however, because it is clear from the record that Elm State had failed to shoulder its burden of establishing that there was good cause to reopen the default. *Id.* at § 2692 at 469.

Good cause to reopen was not established because Elm State had failed to demonstrate that it possessed a meritorious defense. Once in default, Elm State could not present such a defense by mere conclusory statements. *Breuer Electric Manufacturing v. Toronado System of America*, 687 F.2d 182, 186 (7th Cir.1982). Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general

denials with some underlying facts. Elm State failed to do so here. The affidavits that defendants filed were no more than sworn conclusory denials and were properly held to be insufficient. We, therefore, conclude that the district court did not abuse its discretion when it denied Elm State's motion to reopen the default.

### 2. The Calculation of Damages

■ The court did abuse its discretion in determining damages. After the court had denied Elm State's motion to reopen the default, it held a hearing pursuant to Rule 55(b)(2) to determine the amount of Sony's damages. Elm State failed at that time to present any evidence to refute Sony's damage claims and, instead, argued its motion to vacate the default judgment. At the conclusion of the hearing, the judge asked, "Does either side wish to submit any further papers on the damages question? Damages, attorney's fees, costs? I think those are the three items you're talking about." J.App. at 239. The judge and counsel for the parties then set a schedule for submitting papers to the court.

Adhering to that schedule, Elm State submitted papers and invoices to demonstrate that it had suffered a loss on sales of the infringing Sony microchips and argued that its infringement of Sony's trademark was not willful. Sony then urged the district court to ignore Elm State's evidence "because defendants were required to submit all evidence offsetting defendants' profits at the [i]nquest, and the submission of [Elm State president, Richard Gurton's] affidavit prevents plaintiff from cross-examining the affiant." J.App. at 211–12. The court then chose to disregard the evidence that it had explicitly invited Elm State to submit, stating: "Defendants were given ample opportunity [at the damages hearing] to submit any evidence in opposition to plaintiff's claim that defendants' profits equalled the sales reflected on the invoices. Defendants, however, chose to offer no evidence whatsoever at the hearing." J.App. at 221.

Sony had the burden only of proving Elm State's gross receipts from sale of the infringing chips; Elm State had the burden of proving its costs and other deductions. 15 U.S.C. § 1117(a) (Supp.1986). The inquiry into the amount of damages was to be "subject to the principles of equity." *Id.* Having invited Elm State to enlarge the record by submitting papers on the damages issue, the court disregarded principles of equity and abused its discretion by ignoring the evidence that Elm State submitted. The court could have reopened the damages hearing to allow Sony to cross-examine Elm State's president if the court determined that such inquiry was necessary to authenticate or rebut the invoices submitted by Elm State, but the court was not entitled simply to refuse to consider the evidence that it had invited Elm State to submit.

We, therefore, affirm the denial of Elm State's motion to reopen the default but vacate the judgment. We remand for further proceedings consistent with this opinion to determine the proper amount of Sony's damages.

The parties shall bear their own costs.

MANSFIELD, Circuit Judge (concurring):

I concur. However, I would add that the majority opinion does not in my view preclude Judge Daly upon remand from awarding a reasonable attorney's fee to Sony's counsel pursuant to 15 U.S.C. § 1117, which provides in pertinent part that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party".

The record contains ample evidence of bad faith on the part of Elm State and foot-dragging on the part of its counsel, which put Sony to unnecessary trouble and expense. Despite a warning letter from Sony and after assuring that sales of the counterfeit semi-conductors would be stopped, Elm State nevertheless continued to sell the infringing items, forcing Sony to resort to an infringement action and to obtain injunctive relief. Thereafter, Elm

State failed to appear at the preliminary injunction hearing and, despite its failure to demonstrate that it had any defense, unnecessarily prolonged the default proceedings. Indeed, even though it had weeks to prepare for the district court's December 18, 1985, evidentiary hearing on damages, Elm State failed at that hearing to introduce evidence on that matter but further stalled the proceeding until its submission of its invoices on January 10, 1986.

This record would entitle the district judge upon remand to find "exceptional circumstances" within the meaning of § 1117.