**ENRON OIL CORP., Enron International Incorporated, Enron Corp., Plaintiffs–Appellees,**

**v.**

**Masonori ("Mike") DIAKUHARA, Bulk Oil (U.S.A.), Inc., Brian Frith, Isla Petroleum Inc., Clive DC Joy–Morancho, Akira Kikuchi, Thomas N. Mastroeni, Louis J. Borget, Nichimen Corporation, X–Line Enterprises, Ltd., OMAC Limited, OMAC Trading Limited, Petropol Energy, Inc., Rigoil (UK) Limited, Rigoil, Inc., Roanne Trust Company (Jersey) Limited, Roanne Trust Co., Ltd., Robert L. Schweitzer, Southwest Oil & Commodities, Inc., St. Helier Trust Company Limited, Tomo Petroleum, Inc., Videogroup, Inc., Defendants,**

**Ronald Z. Fuchs, Defendant–Appellant.**

**No. 1626, Docket 92–9158.**

United States Court of Appeals, Second Circuit.

Argued June 14, 1993.

Decided Dec. 8, 1993.

Raymond A. Connell, New York City (Connell Losquadro & Zerbo, of counsel), for defendant-appellant.

George A. Salter, New York City (Davis, Scott, Weber & Edwards, P.C., Gregory A. Markel, Orrick, Herrington & Sutcliffe, of counsel), for plaintiffs-appellees.

Before: CARDAMONE and MAHONEY, Circuit Judges, and PARKER, District Judge.*

CARDAMONE, Circuit Judge:

Ronald Fuchs, a former trader in the petroleum market, appeals from a default judgment of the United States District Court for the Southern District of New York (Edelstein, J.), entered October 8, 1992, that held him jointly and severally liable in damages with two co-defendants. Fuchs was at the time appearing *pro se* and failed to file an answer precisely within the time limits set by the Federal Rules of Civil Procedure. For this failure, the district court first entered a default against him and later a purported default judgment for more than $257 million. Fuchs contends the district court abused its discretion when, after ordering the entry of default under Federal Rule of Civil Procedure 55(a), but before entering default judgment under Rule 55(b)(2), it refused to set aside the default under Rule 55(c). We reverse because such extreme measures should be reserved by a trial court as a final, not a first, sanction imposed on a litigant.

## BACKGROUND

### A. *Underlying Fraud*

Enron Corporation and its subsidiaries Enron Oil and Enron International (collectively, Enron or plaintiff) are Delaware corporations with their principal places of business in Houston, Texas. Enron is engaged in the business of trading petroleum and petroleum products. It hired Louis Borget in 1984 to oversee its oil trading activities and Thomas Mastroeni to maintain its trading accounts and books. At the same time, the firm established trading policies and limits designed to restrict its market exposure and to protect it from large trading losses.

Beginning in 1985, according to the complaint Enron filed, Borget and Mastroeni—acting in concert with others—defrauded and stole from Enron by entering into a series of trades exceeding Enron's internal trading limits. Plaintiff alleges that by the time this multifarious scheme came to light in October 1987, Borget and Mastroeni had misappropriated $5.9 million from the firm. Enron asserts that Borget and Mastroeni also left it with open positions on the market that the firm was required to cover at a cost to it of an additional $142 million.

Plaintiff further alleges that as part of their fraudulent plan Borget and Mastroeni actively deceived Enron's independent auditors. For example, in March 1987, realizing that an inspection of Enron's open market positions was scheduled, they instructed Enron oil trader Robin Eves to enter into four separate contracts to sell one million barrels of unleaded gasoline to the Bulk Oil Company, and at the same time to enter an agreement with Bulk Oil that these four contracts would never be executed. Eves undertook these transactions with Bulk Oil's executive vice president, defendant Ronald Fuchs, on

---

* Honorable Fred I. Parker, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

March 13, 1987. The purported transfers—which Enron now insists Fuchs knew were sham contracts—effectively camouflaged from its financial examiners Enron's actual trading position.

Fuchs responds that he thought the transactions proposed by Eves were typical "rollover" deals. In any event, he continues, since the dollar amount involved was outside of his trading authority, he brought the proposal to the attention of Bulk Oil's president, Jacob Schreiber, who approved the contracts as a routine transaction. When Enron then failed to confirm its end of the arrangement, Schreiber told Fuchs to cancel the contracts, which was done. Fuchs avers that he never spoke with anyone at Enron other than Eves, and had no knowledge that the aborted transactions were outside Enron's trading limits or designed to evade its auditors' inspection.

### B. *Proceedings Below*

On April 21, 1988 Enron filed a complaint in the Southern District of New York alleging various violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), breaches of fiduciary duty, fraud, and fraudulent conveyances. It named as defendants Borget and Mastroeni, and several others, including Bulk Oil and Ronald Fuchs. Fuchs was personally served on April 22, 1988 and appeared then by counsel.

On July 22, 1988 plaintiff filed an amended complaint that was personally served on Fuchs' counsel. All the defendants were given until August 1, 1988 to respond to the amended complaint. On that date, Fuchs and Bulk Oil filed a motion pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiff's complaint for failure to state a cause of action. Other defendants made the same motion and various parties made discovery requests. On September 1, 1988 Enron filed papers in opposition to Bulk Oil and Fuchs' Rule 12(b)(6) motion.

Fuchs' attorney thereafter notified the district judge that he could not continue to represent Fuchs because Fuchs was unable to pay counsel fees. In an order and stipulation dated October 23, 1989 the district court relieved counsel and noted that defendant would appear thereafter as a *pro se* litigant. In December 1989 Bulk Oil filed a petition for protection under the bankruptcy laws, staying further proceedings against the oil company. *See* 11 U.S.C. § 362 (1988).

A court conference was held on January 25, 1990 to resolve discovery disputes. At the conference plaintiff successfully sought leave to file a second amended complaint. The district court deferred decision on defendants' outstanding motions to dismiss the first amended complaint, stating it had reviewed the parties' motions with respect to the earlier complaint, and "if the defendants are contemplating similar or duplicative motions on the [second] amended complaint, I will be very much displeased."

Enron filed its second amended complaint on March 26, 1990, serving a copy on Fuchs by regular mail. The allegations concerning Fuchs' role in the alleged fraud in the second amended complaint were substantially the same as those in the first amended complaint. On April 9, 1990—referring specifically to "all papers filed on August 1, 1988 in support of the motion to dismiss the first amended complaint"—two defendants, not including Fuchs, moved to dismiss the second amended complaint. After several months of active discovery, plaintiff settled with a number of the defendants, who were then dismissed from the case. As of May 1991 plaintiff had outstanding claims only against defendants Fuchs, Borget, and Mastroeni—each of whom had failed to answer Enron's second amended complaint.

On April 24, 1991 Fuchs sent a letter to the district court, with a copy to plaintiff, informing it that Enron's second amended complaint "was not served to me." Fuchs also wrote, "I received information that the court had found me in default and if this is true, I ask that Your Honor would vacate any Order based on Enron's Application." A week later, on May 2, Enron responded to Fuchs' letter by stating, "Plaintiffs have not filed an application for default judgment.... Mr. Fuchs is also wrong about not being served with the Second Amended Complaint; he was served by mail on March 26, 1990."

On June 3, 1991 Enron applied for an order directing the clerk of the court to enter defaults under Fed.R.Civ.P. 55(a), and for default judgments under Fed.R.Civ.P. 55(b)(2), against defendants Fuchs, Mastroeni, and Borget. It served a notice of this default application on Fuchs by hand, and informed him that the application would be made before the court on June 11, 1991. Plaintiff's counsel provided an affidavit in support of its application in which it stated that, despite Fuchs' claims to the contrary, he had in fact been served by mail with the second amended complaint, and that he had been served personally with the original complaint.

In answer to Enron's default application, Fuchs sent a hand-delivered letter to Enron on June 5, 1991 with a copy to the district court. Fuchs repeated his previous assertion that he had never been served with the second amended complaint and argued that therefore he could not be in default. Fuchs continued: "I believe that rather than arguing back and forth and wasting court time with motions for default, it would be more helpful if you could send to me Enron's Second Amended Complaint. . . ." Plaintiff complied with this request by delivering a copy of the second amended complaint to Fuchs on June 10, 1991.

In a letter to the district court dated June 11—the following day—Fuchs made a motion that Enron's default request be denied. In a supporting affidavit, he affirmed: "It is only today, June 10th, 1991, that I have received from Enron's attorneys their Second Amended Complaint. . . . I confirm its acceptance and will reply it [sic] shortly." There is some question as to when, if ever, the district court received Fuchs' letter and affidavit. Although Fuchs states the correspondence was sent to the district court and Enron on June 11, the docket sheet does not reflect the receipt of these papers.

Apparently without the benefit of Fuchs' response to Enron's papers seeking a default, the district court filed a default order directing that default judgment be entered against Fuchs, Mastroeni, and Borget on June 11, 1991. Its stated reason for doing so was because these parties had failed to an-

swer the second amended complaint. The district court then referred the case to a magistrate judge for an assessment of damages. On June 18 plaintiff sent Fuchs a copy of the district court's default order, to which defendant replied on the same day. He noted: "It seems to me that your honor has reviewed and signed Enron's motion prior to the court receiving my Application [of June 11 to reject default judgment]." Fuchs then requested either that his application be considered or that he be granted a hearing on the issue of vacating the default.

The trial court treated Fuchs' letter as a motion to set aside the entry of default under Fed.R.Civ.P. 55(c) and, in an order dated June 21, 1991, denied it stating in part,

WHEREAS Fuchs was personally served with plaintiffs' application for the default judgment on June 3, 1991, said motion returnable on June 11, 1991; and

WHEREAS by Fed.R.Civ.Pro. 6(d), any opposing affidavit to the application for the default had to be filed no later than June 10, 1991; and

WHEREAS Fuchs made no such timely filing; and

IT IS HEREBY ORDERED that Fuchs' petition to vacate the default judgment is denied.

On June 25, 1991 Fuchs took an appeal, which we dismissed on August 5 because the district court's order was not final. The matter then proceeded before the magistrate judge for a calculation of damages.

On August 16, 1991 Enron submitted to that court proposed findings of fact and conclusions of law with respect to damages. Fuchs responded with an affidavit dated September 30, 1991 in which he denied any wrongdoing. On October 31, 1991 the magistrate judge recommended to the district court that damages be assessed against Fuchs and the two other defaulting defendants, Mastroeni and Borget, in the amount of approximately $85.7 million, which when trebled under RICO amounted to a default judgment in excess of $257.3 million for plaintiff.

On November 19, 1991 Fuchs retained current counsel to represent him in the instant litigation. One day later, with the assistance

of counsel, Fuchs filed an objection to the magistrate judge's report. The district court found these objections to be "without merit" and accepted the report in its entirety. It accordingly held Fuchs, Borget, and Mastroeni jointly and severally liable to Enron for the full $257,399,991. Final judgment against Fuchs and his co-defendants was entered on October 8, 1992. This appeal followed.

## DISCUSSION

Fuchs' principal contention on appeal is that the district court erred in denying his June 18, 1991 *pro se* motion to vacate the entry of default under Fed.R.Civ.P. 55(c). He argues in the alternative that the default judgment should have been vacated due to the failure of Enron's second amended complaint to contain well-pleaded allegations of fact establishing his liability. Because we think it was an abuse of discretion for the district court to refuse to set aside the default, we need not decide Fuchs' alternative argument.

### I General Principles

#### A. *Procedural Rules for Entry of Default and Default Judgment*

We begin analysis by tracing the procedures established by Rule 55 for the entry of default and the entry of a default judgment. Rule 55(a) states that a clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. The clerk's record should contain a notation to that effect. Fed.R.Civ.P. 55(a). Rule 55(b)(1) and Rule 55(b)(2) provide that judgment by default be entered as follows: The clerk may enter a judgment when the claim is one for a sum certain, if furnished with an affidavit of the amount due, and provided that defendant has been defaulted for failure to appear. *See* Fed.R.Civ.P. 55(b)(1). In any other case, other than a sum certain, application must be made to the court for a default judgment. The defendant, if he or she has appeared, is entitled to three days written notice prior to the hearing on such application. *See* Fed.R.Civ.P. 55(b)(2). If in

order to enter a default judgment the amount of damages must be ascertained, the court may conduct a hearing or order a reference. *Id.*

■ The entry of default is an interlocutory act and, as such, a non-final order. It is therefore not appealable, as the procedural history of this case illustrates. A default judgment is a final action by the district court in the litigation—one that may be appealed. In an appeal from a default judgment, the court may review both the interlocutory entry of default and the final judgment. *See Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 335–36 (2d Cir.1986).

After default or a default judgment has been entered, Rule 55(c) grants a litigant the right to petition to set either aside. *See* 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2692, at 464 (2d ed. 1983). A party may move pursuant to Rule 55(c) to set aside the entry of default for "good cause" or to set aside a default judgment in accordance with Rule 60(b). Fed.R.Civ.P. 55(c).

■ The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983). Such discretion is nonetheless not unlimited; we have reversed its exercise, even where the abuse was not glaring. *See Davis v. Musler,* 713 F.2d 907, 913 (2d Cir.1983); *Traguth,* 710 F.2d at 94; *accord Bridoux v. Eastern Air Lines, Inc.,* 214 F.2d 207, 210 (D.C.Cir.), *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954).

■ The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits. *See Traguth,* 710 F.2d at 94; *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). We

recognize the tension that exists between the push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously, which cases delay and clog its calendar, on the one hand; and the strong pull on the same trial judge to do justice in the individual case, on the other hand. But an understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case. It is the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard. *See Merker v. Rice,* 649 F.2d 171, 174 (2d Cir.1981); *see also Gill v. Stolow,* 240 F.2d 669, 670 (2d Cir.1957) ("general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default").

██ Default procedures, of course, provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice. *See* Wright et al., *supra,* § 2693, at 477–79. Yet, because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously. *See, e.g., Davis,* 713 F.2d at 915; *Meehan,* 652 F.2d at 277; 6 James W. Moore et al., *Moore's Federal Practice* ¶ 55.10[1], at 79 (2d ed. 1993).

## B. *Substantive Rules for Set Aside of the Same*

██ With these general principles in mind, we turn to the substantive rules for setting aside a default or default judgment under Rule 55(c). Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Because Rule 55(c) does not define the term "good cause," we have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *See, e.g., Action S.A.,* 951 F.2d at 507; *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987); *Meehan,* 652 F.2d at 277. Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. *See Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320 (2d Cir.1986). Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, *see, e.g., Meehan,* 652 F.2d at 276, because the concepts of finality and litigation repose are more deeply implicated in the latter action.

██ Further, concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se.* A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge. *See Traguth,* 710 F.2d at 95; *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (allegations of *pro se* complaint are held to less stringent standard than formal pleading drafted by lawyers, when court considers a motion to dismiss). Hence, as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se.*

██ Finally, the importance of an explanation by the district court for its denial of a motion to vacate in light of these criteria is self-evident. The absence of an explanation defeats intelligent appellate review. *See, e.g., Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Davis,* 713 F.2d at 913. While the failure of a district judge to provide an explanation is not always fatal—so long as it is possible to discern that the appropriate criteria have been satisfied, *see Marziliano,* 728 F.2d at 156; *Standard Newspapers, Inc.*

v. *King*, 375 F.2d 115, 116 (2d Cir.1967) (per curiam)—it remains true that a trial court should provide specific reasons for a denial of a motion to set aside a default under Rule 55(c).

## II Substantive Principles Applied

We turn now to consider the application of these general principles to the case at hand. At the outset, we believe the district court's June 11 order directing that a default judgment be entered against Fuchs was improper. The docket entries show that plaintiff moved for the entry of a default and a default judgment on June 3, 1991 and made the application returnable on June 11. On June 11, 1991 the district court entered a default judgment against defendant Fuchs. This order was improper because a default judgment cannot be entered until the amount of damages has been ascertained. Here, the district court ordered entry of such a judg-ment in the same order in which it referred the case to the magistrate judge to compute damages. Thus, the default judgment was not valid when entered on June 11, 1991 because at that time the district court only had the authority to order an entry of default.

Treating the June 11 order as an order for entry of default, we now turn to assess the substantive issues involved in the entry of default to determine whether they meet the good cause criteria. We first note that the district court was not faced with a defendant who failed to appear or defend the action against him. Not only did Fuchs respond to plaintiff's first amended complaint with a motion to dismiss, but he also participated with plaintiff in discovery. Although he did not file a motion to dismiss the second amended complaint, his original motion to dismiss was responsive to the second amended complaint, as the amended charges did not substantially alter the original allegations made against him. Moreover, upon granting leave to file the second amended complaint, the district court specifically stated that it would hold the pending motions to dismiss—including defendant Fuchs' motion—in abeyance and actively discouraged the submission of fur-ther motions to dismiss. Under these cir-cumstances an entry of default is in itself a dubious action.

We need not decide on this basis, though, because we find that the district court abused its discretion in refusing to set aside the entry of default under Rule 55(c). In its order of June 21, 1991 the district court summarily dismissed Fuchs' motion to vacate the entry of default because he failed to make a timely filing. The order does not set forth the "good cause" factors the district court is required to consider when ruling upon a Rule 55(c) motion. Nor does the order address Fuchs' explanation for not an-swering the second amended complaint. There is no indication that the trial court carefully studied the matter as called for by *Davis* and *Standard Newspapers*. More-over, the record on appeal does not make readily apparent the reasons why the district judge denied the motion to set aside the default.

In refusing to set aside the entry of default solely on the basis of Fuchs' untimely re-sponse to Enron's default application, the district court also failed to consider other important circumstances. It did not ac-knowledge, for example, Fuchs' then status as a *pro se* litigant, or that his opposition papers were filed only a day or so late, and his affidavit was signed on the same day he asserted that he finally received a copy of the second amended complaint, after twice indi-cating that he had never been served. *See Traguth*, 710 F.2d at 95. Further, defaults, as earlier explained, are particularly disfa-vored by the law when substantial rights are implicated, *see, e.g., Klapprott v. United States*, 335 U.S. 601, 611–12, 69 S.Ct. 384, 388–89, 93 L.Ed. 266 (1949), or when sub-stantial sums of money are demanded, *see Sony Corp.*, 800 F.2d at 320 (listing cases holding that default disfavored when large sums of money are involved). Here the miti-gating factor of the large $257.3 million mon-ey judgment obtained by plaintiff because of defendant's default was not discussed. Hence, the record makes plain that had the proper "good cause" standard been applied, the court should have set aside the entry of default.

### A. *Willfulness of Default*

This is not a case of a willful default or a refusal to proffer an excuse for not respond-ing. Fuchs' conduct and *pro se* correspon-

dence evidences his intent to fulfill his obligations as a litigant. He initially retained counsel and filed a timely motion under Rule 12(b)(6) to dismiss plaintiff's first amended complaint. Two months before the entry of default, he informed plaintiff's counsel and the district court that he had not received Enron's second amended complaint. Whether the defendant did or did not receive the second amended complaint in March of 1990 is disputed; what is clear is that under the case law all doubts must be resolved in favor of trial on the merits. *See Sony Corp.*, 800 F.2d at 320; *cf. Camp v. Guercio*, 464 F.Supp. 343, 346 (W.D.Pa.1979) (judgment of default for failure to file timely answer could not be entered when evidence was conflicting as to whether service of amended complaint was ever accomplished).

Thus, assuming that Fuchs did not receive the second amended complaint, there could be no "willfulness" in his failure to answer that pleading. When he finally received a copy of this pleading, along with Enron's motion for entry of default, he responded immediately, making clear that he was not willing to forfeit his rights. Again, when the court entered a default against him, Fuchs assumed that it had done so without reading his June 11 letter and affidavit, and promptly applied for a motion to set aside the entry. Unlike the defendant in *Action S.A.*, 951 F.2d at 507, who deliberately chose not to appear in an action, Fuchs made a good faith effort to adhere to the rules of the court and to protect his rights, and therefore did not willfully default.

### B. *Prejudice to Plaintiff*

Setting aside the entry of default will not prejudice Enron. Plaintiff has argued on appeal that it would be unfair to require it to re-commence litigation years after these transactions occurred because the passage of time will impair its ability to prosecute. Concededly, the result we reach will cause plaintiff some delay. But delay standing alone does not establish prejudice. *Cf. Davis*, 713 F.2d at 916 (when vacating a default judgment, "delay alone is not a sufficient basis for establishing prejudice"). Additionally, though Fuchs was required under Fed.R.Civ.P. 15(a) to respond within ten days after Enron filed its second amended complaint on March 26, 1990, Enron did not file its notice of application for entry of default until June 3, 1991. The fact that plaintiff

waited over a year before seeking such relief strongly suggests that some further delay will not unduly prejudice it. Enron asserts no other sort of prejudice.

### C. *Meritorious Defense*

Finally, Fuchs has proffered a meritorious defense. A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. *See, e.g., Sony Corp.*, 800 F.2d at 320–21. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980); *see also Davis*, 713 F.2d at 916. More than sufficient evidence of a complete defense is found in this record.

Fuchs states in his affidavit that he was not aware of Enron's financial condition or its trading limits and did not know that his transactions with Bulk Oil were designed by it to evade its auditors' detection. Enron's own trader, Robin Eves, confirmed that Fuchs had no reason to know that the March 13, 1987 gasoline transactions between Bulk Oil and Enron were illicit. The proof set forth in Fuchs' original motion to dismiss, his subsequent affidavits, and the deposition testimony of Robin Eves adequately stated a defense for purposes of a Rule 55(c) set aside of an entry of default. *See Meehan*, 652 F.2d at 277.

## CONCLUSION

Thus, we hold the district court should have assessed Fuchs' Rule 55(c) motion in terms of the established "good cause" criteria and the other relevant factors. Had it done so it would have granted defendant's motion to set aside the entry of default. Its failure to do so was an abuse of discretion. Consequently, the judgment appealed from is reversed and the case is remanded to the district court for further proceedings on the merits.