WESTMARK DEVELOPMENT CORPO-RATION, d/b/a Central Sand & Gravel and Westmark Properties, Inc., Plaintiffs,

v.

CENTURY SURETY COMPANY and Merchants & Business Men's Mutual Insurance Company, Defendants and Third–Party Plaintiffs,

v.

Timothy R. Parmenter, Third–Party Defendant.

No. 98–CV–550C.

United States District Court, W.D. New York.

Feb. 15, 2001.

Hall, Ricketts, Marky & Gurbacki (Robert H. Gurbacki, of counsel), East Aurora, New York, for plaintiffs and third–party defendant.

Cozen and O'Connor (John K. McDonald, of counsel), Philadelphia, Pennsylvania, Connors & Vilardo, LLP (James W. Grable, Jr., of counsel), Buffalo, New York, for defendants.

## BACKGROUND

CURTIN, Senior District Judge.

In this action, plaintiff corporations Westmark Development Corp., d/b/a Central Sand & Gravel, and Westmark Properties, Inc., sought recovery on insurance policies provided by defendant insurance companies (Century Surety Co. and Merchants and Businessmen's Mutual Insurance Co.) for losses resulting from an April 8, 1996 fire on plaintiffs' premises. Plaintiffs' action was filed by his attorney, William Duncanson, Esq., in New York State Supreme Court, Chautauqua County, on April 8, 1998, and was served on defendants on August 3, 1998. Defendants removed the suit to this court on September 2, 1998 pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) and (b). Item 1. Defendants answered and asserted a counterclaim. Item 5.

On September 24, 1998, defendants filed a third-party complaint (Item 6) against Timothy R. Parmenter, the president and sole officer of plaintiff Westmark Development Corp. and vice-president of plaintiff Westmark Properties, Inc., who allegedly managed and controlled all corporate affairs of plaintiffs. Having conducted a full investigation of the fire, the defendants in their third-party complaint charged that the fire loss was "deliberately caused by, or at the direction of, the plaintiff corporations' alter ego Timothy R. Parmenter ..." and that Parmenter, in Sworn Statements in Proof of Loss, "Wilfully, deliberately and maliciously, in an attempt to defraud defendants/third-party plaintiffs, conceal[ed] the true origin of the fire...." Item 6, ¶¶ 14, 18. Defendants sought recovery from Parmenter individually for all sums that maybe adjudged against defendants and for all expenses incurred by defendants as a result of Parmenter's actions in what they allege was his role in intentionally causing the April 8, 1996 fire loss.

Parmenter never filed an Answer to the third-party complaint. On April 12, 1999, defendants propounded discovery requests and served them on plaintiffs, which were also never responded to. Then on June 30, 1999, William Duncanson, plaintiffs' counsel, filed a motion to withdraw as counsel. In his affidavit, Duncanson stated that Parmenter

had lied to him, had failed to respond to his letters, and had not been cooperative with him in his preparation of the case. Item 8. Duncanson averred that he had written to Parmenter on August 5 and 27, 1998, asking him to call his office to discuss the case, and on November 3, 1998, advising him that he no longer wished to represent him and suggesting that Parmenter retain other counsel. Parmenter never responded to Duncanson's letters.

On July 16, 1999, this court issued an order, served on Parmenter, which advised him of Duncanson's pending motion to withdraw and directing plaintiffs to "advise the court whether they desire to continue with this lawsuit." Item 10. On July 22, 1999, Duncanson informed the court that he had sent a copy of the motion papers to Parmenter at the corporate address in North East, Pennsylvania. However, the papers had been returned to him because the box was closed and the post office was unable to forward them. In the July 22 letter, Duncanson also suggested that the case be dismissed with prejudice if Parmenter failed to contact him or the court within thirty days. Item 13. Defendants did not oppose Duncanson's motion to withdraw. They asked that any order granting the withdrawal motion also include an order dismissing the lawsuit if plaintiffs failed to advise the court of their intention to continue with the action. Item 12. Plaintiffs did not communicate with the court or counsel concerning this order. On August 26, 1999, this court entered an order granting Duncanson's motion to withdraw, dismissing plaintiffs' action, and entering judgment for the defendants. Item 14.

On August 25, 2000, Parmenter, through new counsel, Robert Gurbacki, Esq., petitioned this court, pursuant to Fed.R.Civ.P. 60, for relief from its order of dismissal. Item 16. In his affidavit, Parmenter avers that he was informed by Duncanson when he contacted him on several occasions in 1999 that Duncanson would call him and advise him as to the progress of the case. Item 16, Parmenter Aff., ¶ 9. Further, he claims that Duncanson never had his permission to withdraw nor to ask the court to dismiss the case, and that Duncanson possessed other ad-

dresses and telephone numbers where Duncanson could have contacted him. *Id.,* ¶¶ 11–14. He states that he discovered that his case "had been dismissed a number of months after its dismissal, when I finally called Mr. Duncanson to find out what was going on." *Id.,* ¶ 15. Parmenter asserts he has a meritorious cause of action, in that the plaintiff corporations paid the premium for fire insurance which was in effect when the property was destroyed by fire, and that he has met all the procedural requirements of the carriers. *Id.,* ¶ 16. In his citation-free papers, Parmenter's new counsel claims that Parmenter's failure to pursue his lawsuit was due to Duncanson's negligence, and should be considered under Rule 60(b)(1)'s "excusable neglect" standard. Gurbacki Aff., Item 16, ¶¶ 22, 23, 25.

Defendants have opposed plaintiffs' motion for relief from judgment under Rule 60(b). Item 19. They maintain that it was Parmenter's duty to remain in touch with his counsel, and point out that Parmenter did not contact his attorney for approximately a year and a half, which "leaves no doubt that Parmenter had abandoned this lawsuit." Item 19, ¶ 34. The delays caused by Parmenter have "unfairly prejudiced defendants' ability to defend this lawsuit" and thus, defendants argue, his motion should be denied. *Id.,* ¶ 44.

Having considered the papers submitted in this action, the court denies Parmenter's motion to vacate the default judgment.

## DISCUSSION

### A. Standard to Vacate a Default Judgment

Federal Rule of Civil Procedure 55(c), which governs the setting aside of defaults, provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

▪ The decision whether to grant a motion to set aside a default or default judgment is fully within the discretion of the district court judge, as he or she is most familiar with the circumstances of the case and is in the best position to evaluate the

credibility and good faith of the parties. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir.1991); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). The scope of the district court's discretion in the default context is "a reflection of our oft-stated preference for resolving disputes on the merits." *Enron Oil Corp.*, 10 F.3d at 95 (citations omitted). Such discretion, however, is not unlimited: "[the Second Circuit has] reversed its exercise, even where the abuse [of discretion] was not glaring." *Id.* at 95 (citing cases).

■ Where, as in this case, a default judgment has been ordered by the court, as opposed to a default entered by the Clerk of the Court, the court must look to the more stringent standards of Rule 60(b) to set aside the judgment because the concepts of finality and litigation repose are more deeply implicated. *See American Alliance Insurance Co., Ltd. v. Eagle Insurance Co.*, 92 F.3d 57, 59 (2d Cir.1996) ("A motion to vacate a default [under Rule 55(c) ] is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment."). Fed.R.Civ.P. 60(b) states:

On a motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reason[ ](1) ... not more than one year after the judgment ... was entered. . . .

■ Moreover, when considering whether the requisite good cause exists so as to vacate a default judgment, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1077 (2d Cir.1995). It is well settled in this jurisdiction that such criteria must include: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious

defense is presented. *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634 (2d Cir.1998); *Enron Oil Corp.*, 10 F.3d at 96. These factors echo those propounded by the Supreme Court, which has spoken on the question of what constitutes "excusable neglect" under Rule 60(b)(1). In *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Court opined that the determination of what is

excusable ... is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489.

The Court in *Pioneer* noted that among reasons *not* considered excusable were those attributable to the omissions of a party's attorney, because "clients must be held accountable for the acts and omissions of their attorneys" and "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " *Id.* at 396–97, 113 S.Ct. 1489 (quotation and citations omitted).

■ In this case, where the defendant has sought vacatur based on "excusable neglect," he must show both that he meets the excusable neglect standard as well as that he filed his motion on a timely basis. Concerning timeliness of filing a Rule 60(b) motion, one court commented, "A [Rule 60(b)(1)] motion is not timely merely because it has been filed within one year of the judgment. Rather it must be filed within a reasonable time after the basis for relief is or should be known." *Taylor v. Chevrolet Motor Division*, 1998 WL 341924 at *2 n. 3 (E.D.Pa. June 24, 1998) (citations omitted).

**B. Application**

**1. Was Parmenter's Default Willful?**

■ Of the three criteria to be analyzed in determining whether vacatur should be

granted, "willfulness is preeminent, and a willful default will not normally be set aside." *MacEwen Petroleum, Inc. v. Tarbell*, 173 F.R.D. 36, 39 (N.D.N.Y.1997) (citation omitted). As the Second Circuit has noted, a finding of willfulness under the default judgment standard of mistake, inadvertence and excusable neglect does not include "careless" or "negligent" errors by the defaulting party. *American Alliance*, 92 F.3d at 61. A finding that a defendant has defaulted deliberately is sufficient to establish willfulness under Rule 60(b). *Id.* Accordingly, this court is required to review the record to determine whether Parmenter's default was willful or deliberate, thereby warranting default, or whether it was due to an excusable, negligent error, thereby warranting vacatur pursuant to Rule 60(b).

■ The record provides little guidance in determining whether vacatur is appropriate on the ground that Parmenter's conduct was or was not willful. All Parmenter offers is his own and his new attorney's affidavits, without supporting exhibits. Parmenter casts the blame totally on Duncanson for not contacting him and informing him about the status of the case, claiming his efforts to reach Duncanson were not responded to.

Duncanson directly contradicts Parmenter's assertions. In his motion to withdraw (Item 8), he states that he had not heard from Parmenter since he sent a letter to him in July 1998. He provides as exhibits letters he sent to Parmenter, dated August 5 and 27, and November 3, 1998 that went unanswered. He informed the court that his letter to Parmenter dated July 22, 1999 (Item 13) was returned and that he knew of no other address to reach him. It is important to point out that Parmenter presumably received Duncanson's August and November 1998 letters, as they were not returned by the post office, and that he was presumably aware of their contents.

Even if the court credited Parmenter's argument that Duncanson's negligence led to the default, the rule from *Pioneer, supra,* is clear that each party is considered to have notice of all facts his attorney has notice of.

Defendants argue that Parmenter's "excuse" for not responding to the default should be rejected, particularly given that Parmenter does not "provide any reasonable explanation for his failure to remain in contact with his prior counsel and pursue this lawsuit," and he "provides no context for the Court to accept his naked assertion that he has been unfairly deprived of his day in court." Item 19, ¶ 38.

The court agrees with defendants that Parmenter's failure to maintain contact with his prior counsel demonstrates a lack of diligence. His affidavit shows he did not attempt to reach Duncanson at all in 1998, when he was aware that important matters on his case were outstanding. This was a matter within Parmenter's control, and certainly infers that this lack of contact was deliberate.

What is most troubling is that Parmenter did not move expeditiously to open the default once he learned that default judgment had been entered. He admits in his affidavit that Duncanson informed him that his case had been dismissed "a number of months after its dismissal." Item 16, ¶ 15. The dismissal was granted August 27, 1999. Even granting Parmenter the benefit of the doubt that "a number of months" could be the end of the year, he did not explain why he waited for approximately eight more months, until August 25, 2000, to file his motion to vacate default.

What is more, the inference drawn by defendants that Parmenter did not wish to pursue his action is the more credible, given that he had established a long pattern of dilatoriness and neglect in not pursuing this case and related cases concerning the fire loss. (*See* Item 18, pp. 7–8, for a listing of seven items showing Parmenter's lack of interest in the suit.)

Accordingly, it is reasonable to infer that Parmenter acted in a manner that can be characterized as willful, thereby warranting default. *See, e.g., Gucci America, Inc.*, 158 F.3d at 635 (upholding default judgment where district court had specifically found that defendants deliberately decided not to respond to plaintiff's damages application).

### 2. Will Vacating the Default Prejudice Defendants?

Defendants have argued that the repeated delays caused by Parmenter from the time when he first submitted his insurance claims in 1996 until the present have unfairly prejudiced their ability to defend the suit. They note that the discovery requests they served over eighteen months ago have never been answered. What is more, "[a] year has passed since ... defendants have closed their files [on the case] ... and have had no contact during this period with the numerous fact witnesses who would demonstrate that Mr. Parmenter attempted to perpetrate a fraud" on defendant insurance carriers. Item 19, ¶ 44. Parmenter does not address the issue of prejudice in his papers.

■ Delay alone "is insufficient to establish prejudice; instead plaintiff must show that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *King v. Mastronardi Mason Materials, Inc.,* 1999 WL 294738 at *1 (E.D.N.Y. March 22, 1999) (citation and quotation omitted). The fire occurred in April 1996. To date, defendants have not even received discovery responses from plaintiffs. Considering all of the circumstances and the history of this case, it is apparent that there may be loss of evidence and opportunity for fraud.

### 3. Does Parmenter Present a Meritorious Cause of Action?

■ The law concerning whether a party presents a meritorious argument has usually been framed in the context of whether a meritorious defense has been asserted, given that the defendant, not the plaintiff, is often the defaulting party. The Second Circuit has clearly held that "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.,* 10 F.3d at 98 (citing *Sony Corp. v. Elm State Electronics, Inc.,* 800 F.2d 317, 320–21 (2d Cir.1986)). The question courts must ask is not whether it is likely that the defendant will prevail in presenting a defense (or claim). Rather, the establishment of a meritorious defense depends on "whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (citations omitted). The party need not establish the merits of the defense conclusively. *Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 855 (E.D.N.Y.1995).

Parmenter's assertions that he paid a premium for fire insurance which was in full force and effect when the property was destroyed by fire, and that he had met all the procedural requirements of the carriers would establish a meritorious claim. Other than making these conclusory allegations, he attaches no copies of the insurance contracts as evidence of that fact.

■ However, concerning this prong, it is sufficient if the court merely identifies that factual issues bearing on the merits exist. *MacEwen Petroleum, Inc. v. Tarbell,* 173 F.R.D. 36, 40 (N.D.N.Y.1997). Other courts have required more evidence of merit. *Enron Oil Corp.,* 10 F.3d at 98; *King v. Inspeco, Inc.,* 1995 WL 116274 at *4 (E.D.N.Y., Feb.27, 1995); *D'Orange v. Feely,* 101 F.3d 1393 (2d Cir.1996) (unpublished opinion).

■ "When cases present disputed factual issues, the Federal Rules promote trial on the merits, and hence courts resolve doubts about whether to grant or vacate a default in favor of the defaulting party." *MacEwen,* 173 F.R.D. at 39. Thus, resolving doubts in favor of the defaulting party, the court determines that plaintiffs have asserted a meritorious claim sufficient to meet their burden under this prong of the analysis.

In sum, the court has found for the defendants on the first and second element and, giving plaintiff every benefit of the doubt, found for him on the third.

### 4. Was opening the default timely?

■ Parmenter's motion for default was filed on the last day allowed under Rule 60(b)(1). Thus, it was technically filed in a timely manner. Although the Second Circuit has not spoken to this issue, other courts have found that a Rule 60(b)(1) motion must be filed within a reasonable time after the basis for relief is or should be known. *See, e.g., Kagan v. Caterpillar Tractor Co.,* 795

F.2d 601, 610 (7th Cir.1986); *Taylor v. Chevrolet Motor Division,* 1998 WL 341924 (E.D.Pa. June 24, 1998). Parmenter did not do so.

## CONCLUSION

Since the determination of whether to grant vacatur is essentially an equitable one, wherein the court considers all relevant circumstances, the court denies plaintiff's motion to vacate the default judgment pursuant to Fed.R.Civ.P. 60.

So ordered.