71 F.3d 1073
 33 Fed.R.Serv.3d 931
 Thomas W. BRIEN, an underwriter with Lloyd's of London, on
behalf of himself and all other underwriters subscribing to
policy No. DA19640 and Old Lyme Insurance Company of Rhode
Island, Plaintiffs-Appellees,
v.
KULLMAN INDUSTRIES, INC., Defendant-Appellant.
 No. 53.
Docket 94-9283.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 18, 1995.
Decided Dec. 18, 1995.
 
 Stanley W. Kallmann, Gennet, Kallmann, Antin & Robinson, P.C., Parsippany, NJ, for Plaintiffs-Appellees.
 Michael F. Chazkel, Chazkel & Associates, P.C., East Brunswick, NJ, for Defendant-Appellant.
 Before MINER, MAHONEY and CABRANES, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Appellant Kullman Industries, Inc. ("Kullman") appeals from orders of the United States District Court for the Eastern District of New York (Platt, then-Chief Judge) denying Kullman's motion to vacate the default judgment declaring non-coverage under certain insurance policies issued by appellees Thomas W. Brien and Old Lyme Insurance Company of Rhode Island (collectively, the "insurers"). The district court found that Kullman did not demonstrate a meritorious defense by providing an adequate reason for failure to appear for an examination under oath in accordance with the requirements of the policies.
 
 
 2
 For the reasons that follow, we reverse the orders of the district court and remand for further proceedings on the merits.
 
 BACKGROUND
 
 3
 On May 1, 1992, the insurers issued property insurance policies to Thanos 79 Realty Corp. d/b/a Waterfall Restaurant ("Thanos") insuring certain property located in West Hempstead, New York, for a period of one year, effective on May 1, 1992. Kullman was named as a mortgagee on the policies. Kullman claims that, shortly after the effective date of the policies, during a showing of the premises to prospective buyers, it was discovered that the property had sustained extensive damage. On May 29, 1992, Kullman reported to the insurers its claims for recovery under the insurance policies.[1]
 
 
 4
 On January 21, 1993, the insurers demanded that Kullman submit a proof of loss for its claims for property damage under the insurance policies. The insurers also gave notice that they would require Kullman to submit to an examination under oath after receiving the proof of loss.[2] In a letter dated March 17, 1993 to the attorneys for the insurers, Kullman's counsel questioned why, as a mortgagee, Kullman would need to appear for an examination under oath:
 
 
 5
 [I]t appears that there is no provision in the insurance contract requiring the mortgagee to appear for an Examination Under Oath. If you can direct me to the policy language that authorizes the insurer to examine the mortgagee, I will be in a position to properly advise my client as to their obligations under the insurance contract.
 
 
 6
 On May 10, 1993, Kullman submitted a proof of loss to the insurers in the amount of $1,150,000. The insurers then directed Kullman to appear for an examination under oath to take place either on June 11th or June 24th in the offices of the insurers' attorneys. On June 21, 1993, Kullman's counsel wrote to the insurers' attorneys and again asked why Kullman was required to appear for an examination. On June 23rd, the insurers' attorneys wrote to Kullman's counsel that "our position is that, since [Kullman] has submitted a Proof of Loss as owner, [it] is obliged to appear for an Examination Under Oath." The insurers' attorneys noted that the June 24th examination was adjourned and that they would await a new date. Kullman's counsel, in a letter dated July 21st to the insurers' attorneys, designated its offices as the place where the examination would take place on August 2nd. The insurers' attorneys, however, objected to this location, while Kullman's counsel, in turn, objected to the offices of the insurers' attorneys as a location for the examination. In a July 26th letter, Kullman's counsel set forth its understanding that the insurers would "not be proceeding with the Examination" and that, consequently, Kullman would "proceed with litigation to protect [its] interests."
 
 
 7
 On July 28, 1993, the insurers commenced a declaratory judgment action in the Supreme Court of the State of New York, County of Nassau, against Kullman. The insurers sought a declaration of non-coverage for Kullman's claims, based upon several policy breaches, including Kullman's "refus[al] to submit to an Examination Under Oath at the time and place designated by the representatives of the insurers pursuant to the policies of insurance."
 
 
 8
 On August 27, 1993, Kullman filed a notice of removal, and the action was removed to the United States District Court for the Eastern District of New York. After Kullman failed to serve an answer to their complaint, the insurers requested the entry of a default against Kullman. On October 18, 1993, the clerk signed and filed a certificate of default. Thereafter, Kullman's counsel requested that a conference be scheduled on December 10, 1993, in connection with an application to vacate the default. Kullman's counsel then requested that the conference be adjourned to January 21, 1994, but no one appeared on that date for the conference on behalf of Kullman. Kullman contends that the January 21st date was a "proposed" date that counsel for Kullman did not calendar in his records because he did not know it had been confirmed.
 
 
 9
 On January 27, 1994, the insurers applied for a default judgment against Kullman.[3] On February 17th, the district court entered a default judgment in favor of the insurers, declaring that "the failure of [Kullman] to submit to an Examination Under Oath at a reasonable time and place designated by representatives of the plaintiffs constitutes a material violation of the terms and conditions of the policies of insurance and [Kullman] has forfeited its rights under the policies of insurance."
 
 
 10
 On March 1, 1994, Kullman's counsel requested that a conference be scheduled to obtain permission to move to vacate the default judgment. Following a conference on April 22, 1994, Kullman moved to vacate the default judgment. In an affidavit in support of the motion, Kullman's counsel stated that the insurers had "made a demand upon [Kullman] to appear for an Examination Under Oath although the policy of insurance had no provision contained therein requiring the mortgagee to appear for the same as a condition precedent to seeking recovery under the insurance contract." Kullman's counsel also stated that he had failed to file an answer to the insurers' complaint on behalf of Kullman because he "incorrectly assumed that the Answer was to be filed after the petition [for removal] was determined" and that he had "received conflicting information from the clerk's office as to the correct docket number assigned to the case." The district court held a hearing on June 24, 1994, and denied Kullman's motion to vacate the default judgment, finding that "this record is so outrageous that this is just, and it appears quite clear to me that [Kullman] has not complied with the condition of the policy to appear for an examination under oath." The district court entered its order denying Kullman's motion on July 1, 1994.
 
 
 11
 Kullman then moved for reconsideration and to reopen the time for appeal from the district court's denial of its motion to vacate the default judgment. In an order dated August 31, 1994, the district court denied this motion, finding that "nowhere in [Kullman's] paper have they identified a viable defense to the six causes of action in [the insurers'] complaint." The district court, however, stated that it would
 
 
 12
 exercise its discretion in setting aside the default on two conditions. First, [Kullman] must file a detailed Affidavit of Merits sworn to by a person having knowledge of the facts and not an attorney's affidavit. Second, [Kullman] must pay all of plaintiff's fees and costs incurred in seeking a default in this case and opposing defendant's various motions directed at the default.
 
 
 13
 On September 27, 1994, Kullman submitted an affidavit of merits to the district court. In response, the insurers filed a brief opposing the vacatur of the default judgment. The insurers conceded, for purposes of Kullman's motion, that the affidavit of merits set forth a meritorious defense as to all of the counts in the complaint, except for Kullman's failure to appear for an examination under oath. On November 10, 1994, Kullman filed an answer to the insurers' complaint and a counterclaim for damages in the amount of $1,150,000 plus interest, costs, and attorney's fees.
 
 
 14
 In an Order and Memorandum entered on November 10, 1994, the district court denied Kullman's motion to set aside the default judgment. The court stated:
 
 
 15
 After having reviewed the affidavit of merits, it is plain that it still does not provide an adequate reason for [Kullman's] failure to appear at an Examination Under Oath. Furthermore, the affidavit of merits does not furnish just cause for [Kullman's] failure to move promptly to vacate the default judgment.
 
 
 16
 The court also directed the insurers to serve an accounting of fees and costs on Kullman.
 
 
 17
 On December 5, 1994, Kullman wrote a letter to the district court in which it contended, inter alia, that it was unclear why the court had found that it had not presented a meritorious defense and that it should not be required to pay the insurers' attorney's fees and costs. On December 12, 1994, Kullman wrote another letter to the district court, claiming that, as a mortgagee, it was not required under New York law to submit to an examination under oath, according to United States Fidelity & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 501 N.Y.S.2d 790, 492 N.E.2d 1206 (1986). On the same day, the district court ordered that the insurers be awarded attorney's fees and costs in the amount of $5702.68. Kullman filed a Notice of Appeal on December 13, 1994 and an Amended Notice of Appeal on January 3, 1995.
 
 DISCUSSION
 
 18
 We review a district court's denial of a motion to vacate a default judgment for abuse of discretion. Davis v. Musler, 713 F.2d 907, 912 (2d Cir.1983). Although the disposition of a motion for relief from a default judgment is within the sound discretion of the district court, we may reverse its exercise even where the abuse of discretion is not glaring. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir.1993). This limitation on the scope of the district court's discretion reflects our preference for resolving disputes on the merits. Id. "[D]ismissal is a harsh remedy to be utilized only in extreme situations." Cody v. Mello, 59 F.3d 13, 15 (2d Cir.1995) (internal quotations omitted).
 
 
 19
 Federal Rule of Civil Procedure 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Under Fed.R.Civ.P. 60(b)(1), a court may vacate a default judgment for "reasons [of] mistake, inadvertence, surprise, or excusable neglect." However, "[i]n applying Rule 60(b)(1) in the context of default judgments, courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." Davis, 713 F.2d at 915. These criteria include: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the nondefaulting party if relief is granted." Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir.1990) (internal quotations omitted), cert. denied, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991).
 
 
 20
 In the present case, we think that Kullman presented a meritorious defense, and therefore that the district court abused its discretion in denying Kullman's motion to vacate the default judgment. The district court found that Kullman did "not provide an adequate reason for [its] failure to appear at an Examination Under Oath." However, Kullman did bring to the attention of the district court a reason for its failure to appear. In the affidavit of Kullman's counsel in support of the motion to vacate the default judgment, counsel stated that the insurers "made a demand upon [Kullman] to appear for an Examination Under Oath although the policy of insurance had no provision contained therein requiring the mortgagee to appear for the same as a condition precedent to seeking recovery under the insurance contract." In addition, the district court received, as an exhibit, a letter dated March 17, 1993 from Kullman's counsel to the attorneys for the insurers, stating:
 
 
 21
 [I]t appears that there is no provision in the insurance contract requiring the mortgagee to appear for an Examination Under Oath. If you can direct me to the policy language that authorizes the insurer to examine the mortgagee, I will be in a position to properly advise my client as to their obligations under the insurance contract.
 
 
 22
 As a result, the district court was shown that Kullman had questioned whether, as a mortgagee, it had to appear for an examination under oath pursuant to the insurance policies. Indeed, under New York law, a mortgagee is not obligated to comply with provisions of an insurance policy requiring the insured to appear for an examination under oath. Annunziata, 67 N.Y.2d at 231, 501 N.Y.S.2d at 790, 492 N.E.2d at 1206.[4] Thus, we think that Kullman sufficiently has presented a meritorious defense.
 
 
 23
 Besides the question of whether Kullman has presented a meritorious defense, the other criteria to be considered in determining whether to set aside the default judgment are whether Kullman's default was willful and whether the insurers would be prejudiced by the vacatur of the default judgment.[5] The insurers did not argue, and we do not believe, that they would be prejudiced by the setting aside of the default judgment. With regard to willfulness, Kullman contended that it had failed to file an answer because it "incorrectly assumed that the Answer was to be filed after the petition [for removal] was determined" and because it "received conflicting information from the clerk's office as to the correct docket number assigned to the case." Despite this initial failure, Kullman eventually filed an answer to the insurers' complaint. Although courts should not set aside a default when it is found to be willful, Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir.1991), cert. denied, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992), the district court did not make such a finding and we think that the record does not indicate that Kullman's default was willful. Cf. id. (holding defendant's default to be willful where he "admit[ted] he deliberately chose not to appear in the action because he faced possible indictment upon return to New York").
 
 
 24
 Since Kullman sufficiently has demonstrated that its default was not willful, that it has a meritorious defense, and that there will be no prejudice to the insurers if the default judgment were vacated, we hold that the district court erred in denying Kullman's motion to vacate the default judgment entered in favor of the insurers.
 
 
 25
 Fed.R.Civ.P. 60(b) did not authorize the district court to impose attorney's fees and costs upon Kullman in connection with the denial of his motion to vacate the default judgment, because the rule only addresses the grant of relief "upon such terms as are just." Further, whatever discretionary authority may exist at the trial or appellate level (aside from the express terms of Rule 60(b)) to impose costs upon Kullman, see, e.g., Coon v. Grenier, 867 F.2d 73, 79 (1st Cir.1989), we perceive no basis for such an award in this case. We therefore reverse the district court's order awarding attorney's fees and costs to the insurers.
 
 CONCLUSION
 
 26
 In view of the foregoing, we reverse the orders of the district court and remand for further proceedings on the merits.
 
 
 
 [1]
 Kullman contends that at some time prior to May 28, 1992, Thanos abandoned the property. Nothing in the record indicates that title has been transferred from Thanos to Kullman
 
 
 [2]
 The insurance policies provide, in relevant part:
 The Assured shall submit, and so far as within his or their power shall cause all other persons interested in the property and members of the household and employees to submit to examinations under oath by any persons named by the underwriters relative to any and all matters in connection with a claim and subscribe the same; and shall produce for examination all books of account, bills, invoices, and other vouchers ... at such reasonable time and place as may be designated by the Underwriters or their representatives....
 
 
 [3]
 Kullman argues that it did not receive notice of this application for a default judgment as required by Fed.R.Civ.P. 55(b)(2) (providing that "[i]f the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application"). The insurers contend that such notice was not required because "it was not at all clear ... that [Kullman] was resisting [their] litigation any longer." In view of our disposition of this appeal, we do not address this argument
 
 
 [4]
 The insurers claim that Kullman, in fact, is making a claim as the "owner/insured." However, nothing in the record indicates that title has been transferred from Thanos, the insured owner, to Kullman
 
 
 [5]
 In denying Kullman's motion to set aside the default judgment, the district court expressly addressed only the existence of a meritorious defense and did not make findings as to whether the default was willful or whether setting aside the default would prejudice the insurers