101 F.3d 1393
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Malvina D'ORANGE, Plaintiff-Appellee,
v.
Charles L. FEELY, Defendant-Appellant,
Ralph Crudo & Crudo, P.C., Defendants.
 No. 95-7904.
 United States Court of Appeals, Second Circuit.
 Aug. 8, 1996.
 
 Robert Ullman, New York City, for Appellant.
 William Dunnegan, New York City, for Appellee.
 S.D.N.Y.
 AFFIRMED.
 Before MINER, WALKER, Jr., LEVAL, Circuit Judges.
 
 
 1
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.
 
 
 2
 Defendant Charles Feely appeals from an entry of default and a final judgment entered by the district court, awarding plaintiff Malvina D'Orange damages resulting from the alleged misappropriation of funds from the estate of her late sister by Feely and others. On appeal, Feely contends that the district court 1) abused its discretion in denying the defendant's motion pursuant to Federal Rule of Civil Procedure 55(c) to set aside the entry of default and 2) erred in awarding a default judgment in excess of the amount of damages demanded by the complaint. We affirm.
 
 
 3
 During the pendency of this appeal, on May 11, 1996, plaintiff Malvina D'Orange passed away. D'Orange was the seventy-eight year old sister of Clarette Otalera, who died on November 24, 1989, and was the sole beneficiary of Otalera's estate. Feely, who was a friend of Otalera, had power of attorney over a substantial amount of money held in trust to be used on Otalera's behalf. In addition, Feely was the sole executor of Otalera's estate. D'Orange commenced this action for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (1994) ("RICO") and for breach of fiduciary duty, alleging that Feely embezzled substantial amounts from Otalera under a power of attorney before her death in November 1989 and from D'Orange after Feely was appointed the executor of Otalera's estate. Specifically, D'Orange claims that Feely misappropriated the funds held in trust by making unearned payments to himself and his associates and by loaning money from the estate to his friends. The district court entered a default against Feely on July 29, 1994 and a final judgment in the amount of $1,361,583 on August 9, 1995. The defendant appeals from the district court's denial of his motion to vacate the entry of default as well as the final judgment, reported at 894 F.Supp. 159 (S.D.N.Y.1995).
 
 
 4
 The plaintiff filed her complaint against Feely on June 6, 1994. The following day, the plaintiff sent by facsimile transmission a notice and waiver request, pursuant to Fed.R.Civ.P. 4(d), together with a copy of the summons and complaint to Mark Nearenberg, counsel for Feely in a related Surrogate's Court proceeding. The waiver request stated that
 
 
 5
 if you [Feely] comply with this request and return the signed waiver [within thirty days], it will be filed in court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is
 
 
 6
 sent....
 
 
 7
 By letter dated June 10, 1994, Nearenberg refused to accept service on behalf of Feely. The plaintiff in her discretion chose not to send a Rule 4(d) notice to Feely personally. Rather, six days later, on June 13, 1994, Feely was personally served with the summons and complaint. It is undisputed that personal service was effective and proper and that, under Fed.R.Civ.P. 55(a), Feely had twenty days to answer or otherwise respond to the complaint. Feely did not do so.
 
 
 8
 In the meantime, when Nearenberg responded to the plaintiff's attorney on June 10, 1994, he also telefaxed a copy of the Rule 4(d) waiver request, summons, and complaint to Feely. Although the plaintiff did not send Feely a Rule 4(d) waiver by mail, Feely claims that he did not know that the service of the waiver on his attorney by facsimile transmission was improper. Apparently, despite the fact that Feely had been personally served on June 13, 1994, he assumed that he was still entitled to respond within thirty days of the date of the Rule 4(d) notice. On July 6, 1994, approximately three weeks after he had been served personally and exactly thirty days from the date of the Rule 4(d) notice, Feely returned the signed waiver, which was received by the plaintiff's counsel the next day. Apparently because he believed that he had until August 8, 1994 to answer the complaint, Feely retained counsel to represent him in the district court proceedings during the first week of August.
 
 
 9
 Unbeknownst to Feely, on July 8, 1994, the plaintiff's counsel made an application for default against Feely on the ground that Feely had not timely answered the complaint. Judge Motley entered a default--erroneously styled a "default judgment"--on July 29, 1994. Feely moved to vacate the default by notice of motion filed on September 12, 1994. On September 30, 1994, the district court denied the motion and referred the matter to Magistrate Judge Gershon for a determination of the amount of damages. Following a two-day inquest, on August 9, 1995, the district court entered a default judgment against Feely in the amount of $1,361,583.
 
 
 10
 In an appeal from a default judgment, we may review both the interlocutory entry of default as well as the final default judgment. Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 335-36 (2d Cir.1986). Feely argues principally that the district court abused its discretion in refusing to set aside the entry of default pursuant to Rule 55(c). Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," a default may be entered against him. After default or a default judgment has been entered, a litigant may petition to set either aside under Rule 55(c) for "good cause shown." Fed.R.Civ.P. 55(c). Although Rule 55(c) does not define the term "good cause," the Second Circuit has established three criteria to be assessed in determining whether "good cause" is demonstrated. These factors are (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the party who secured its entry. Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir.1984) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir.1983)). Other equitable factors that may be considered include whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about an unfair result. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir.1993).
 
 
 11
 Because the district court "is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of parties," a motion to set aside an entry of default is addressed to the sound discretion of the district judge. Enron, 10 F.3d at 95; Traguth, 710 F.2d at 94. Thus, we review the district court's denial of the motion to vacate the default judgment for abuse of discretion. Brien v. Kullman Indus., 71 F.3d 1071, 1077 (2d Cir.1995).
 
 
 12
 The defendant argues that the district court's "[f]ailure ... to issue a detailed explanation of the reasons for its denial" warrants reversal. Although it is true that, in denying a motion to set aside a default under Rule 55(c), a district court "should provide specific reasons," Enron, 10 F.3d at 96; see Davis v. Musler, 713 F.2d 907, 913 (2d Cir.1983) (district court must "reveal the standards that the district judge applied in denying the motion, or the factors he considered determinative"), "the failure of a district judge to provide an explanation is not always fatal--so long as it is possible to discern that the appropriate criteria have been satisfied," Enron, 10 F.3d at 96 (citations omitted). In this case, although the district court did not specifically set forth all of the "good faith" factors, see Enron, 10 F.3d at 96, the hearing transcript adequately demonstrates that the district court assessed Feely's Rule 55(c) motion in terms of the established "good cause" criteria and the other relevant equitable factors.
 
 
 13
 Even viewed generously, the defendant's actions and explanations do not demonstrate "good cause." First, the only reason offered by the defendant for his failure to respond is the "confusion" caused by the plaintiff's service on him personally after he had received a copy of the Rule 4(d) notice that had been telefaxed to him by Nearenberg. He claims that he did not realize that the intervening personal service, and not the improperly served Rule 4(d) notice, established the time allowed for his response. We agree with the district court that Feely--a Brooklyn Law graduate who practices administrative law--had no reasonable basis upon which to assume that the Rule 4(d) notice that was forwarded to him from Nearenberg was operative and that proper personal service on him was not. This simply was not a case in which the defendant made "a good faith effort to adhere to the rules of the court and to protect his rights." Enron, 10 F.3d at 98.
 
 
 14
 Second, we agree with the district court that Feely has not presented a meritorious defense. A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. Id. The test is "whether the evidence submitted, if proven at trial, would constitute a complete defense." Id. With respect to the claim of breach of fiduciary duty, Feely submitted to the district court a copy of a handwritten letter from the plaintiff that authorized Feely to pay himself out of the estate of services rendered. Feely also "categorically den[ies] that the accountings provided were fraudulent or that [he] utilized money on [his] own behalf." Nonetheless, he fails to explain his taking of more than $76,000 from Otalera's estate, for Feely has failed to produce critical documents, including bills for his alleged legal and administrative services, related to the estate and his acts as executor. In fact, during Feely's deposition, the plaintiff suggested "tak[ing] a brief recess to allow [Feely] to get to [his] office to retrieve the documents ... namely the bills to Malvina D'Orange from [his] computer; second, the running balance of the estate of Clarette Otalera; three, the trust account statements; and four the letter from Malvina D'Orange regarding fees." Feely refused to do so. Moreover, Feely's counsel admitted that Feely loaned money from the estate. Finally, Feely chose not to appear at the inquest to refute the claim for damages. The defendant's contention that D'Orange failed to properly allege a RICO violation also fails. We find that the plaintiff adequately alleged the elements of a RICO claim, see Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, 465 U.S. 1025 (1984), and that she has demonstrated that she has been injured by the conduct constituting the violation, see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1984); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir.1990).
 
 
 15
 Third, although we are concerned by the fact that the one "good faith" factor that was not explicitly considered by the district court during the hearing--prejudice to the plaintiff--weighs in favor of the defendant, we conclude from the factors as a whole that, on balance, the district court's decision not to set aside the default was not an abuse of discretion. See Wagstaff-El v. Carlton Press Co., 913 F.2d 56 (2d Cir.1990), cert. denied, 499 U.S. 929 (1991).
 
 
 16
 The defendant also contests the calculation of damages. Upon request of the plaintiff, a default judgment may be entered by the clerk when 1) the plaintiff's claim against the defendant is for a sum certain, 2) the plaintiff has submitted an affidavit of the amount due, and 3) the defendant has been defaulted for failure to appear. Fed.R.Civ.P. 55(b)(1). If, however, the plaintiff's claim is not for a sum certain, an application must be made to the court for a default judgment. Fed.R.Civ.P. 55(b)(2). Moreover, a default judgment may not exceed the amount of damages demanded by the complaint.
 
 
 17
 In this case, because the claim was not for a sum certain, the amount of damages had to be ascertained by the district court before a default judgment could be entered. At the very least, after the entry of default, Feely had an opportunity to take the plaintiff's deposition before a determination was made with respect to damages. Thereafter, on June 29 and 30, 1995, the district court held an inquest to set the amount of damages. On the first scheduled day of the inquest, Feely failed to appear and his attorney requested an adjournment. The district court received the testimony of the plaintiff, but granted the request for an adjournment for one day. Feely also failed to appear on the following day and his attorney again requested an adjournment. The district court denied the request, yet accepted evidence from Feely's attorney. Apparently, Feely did not wish to upset his vacation plans by appearing at the inquest.
 
 
 18
 Feely now argues that under Rule 54(c), judgment could not be entered for an amount in excess of the amount specified in the complaint, which he claims is a total of $122,000. Although it is true that the complaint alleges that Feely misappropriated $43,000 before Otalera's death (Paragraph 10) and $79,000 after Otalera's death (Paragraph 14), Paragraphs 22 and 33 allege that Feely's racketeering activities damaged D'Orange "in an amount in excess of $120,000, the precise amount of which should be determined by the trier of fact" and Paragraphs 37 and 41 allege that Feely's breach of fiduciary duty damaged her "in an amount to be determined by the trier of fact." The complaint also specifically requests punitive and treble damages. It is because the amount of damages alleged in the complaint was left open-ended that the court was required to hold a hearing on the matter.
 
 
 19
 The breakdown of the damages award by the district court is the following. In connection with the amount embezzled under the power of attorney, the district court subtracted the amount that Feely accounted for ($17,641) from the amount with which he had been entrusted by Otalera ($284,811) to arrive at a damage amount of $267,170 together with prejudgment interest. Although Feely claims that some of this money in the trust account belonged to others, he failed to produce any evidence to substantiate this claim, and thus we cannot find the district court's conclusion to be clearly erroneous. In connection with the amount Feely embezzled as executor of the estate, the district court found that he wrote unauthorized checks to himself and his associates in the amount of $76,986. Therefore, the district court also awarded the plaintiff this amount together with prejudgment interest. Because the RICO statute provides for the recovery of treble damages, 18 U.S.C. § 1964(c), the district court trebled the foregoing amounts to enter judgment for a total amount of $1,361,583. We find no error in these calculations by the district court.
 
 
 20
 For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.