**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
Plaintiff,

v.

**Hudson S. RANKIN, Jr., Defendant.**

**No. 99–CV–591C(H).**

United States District Court,
W.D. New York.

Feb. 22, 2001.

Hodgson, Russ, Andrews, Woods & Goodyear LLP (Patrick M. Tomovic, Keven D. Szczepanski, of counsel), Buffalo, New York, for plaintiff.

Robert M. Restaino, Niagara Falls, New York, for defendant.

## INTRODUCTION

CURTIN, District Judge.

Defendant Hudson S. Rankin, Jr. ("Rankin"), seeks vacatur of the court's January 12, 2000, order granting default judgment to plaintiff insurer, Nationwide Mutual Fire Insurance Company ("Nationwide"). Item 10. The default judgment (Item 8) was entered on a declaratory judgment action which Nationwide instituted against Rankin. Item 1. Nationwide sought a judicial declaration that it was under no obligation to defend or indemnify Rankin relative to an altercation he had with Tony DeCarlo ("DeCarlo"), the plaintiff in an underlying New York civil action instituted against Rankin. Item 1,

¶ 15. Both Rankin and DeCarlo [1] filed motions with supporting papers to vacate the default judgment entered against Rankin. Items 10 and 11. Rankin also seeks permission to file a late answer and a counterclaim against Nationwide, as well as a grant of summary judgment in his favor. Item 10, p. 14. Nationwide has filed a memorandum and declaration opposing both Rankin's and DeCarlo's motions to vacate. Items 13 and 14. For the reasons set forth below, the court grants Rankin's motion to vacate and motion to file a late answer.

## BACKGROUND

### I. The Underlying Action

On May 16,1998, defendant Rankin attended an event known as "Las Vegas night" in Niagara Falls, New York. Item 10, ¶ 2; Item 14, Exhibit H. During the course of the evening, Rankin was involved in an incident with DeCarlo. This incident forms the underlying basis for the present action. Rankin avers that he was introduced to DeCarlo soon after arriving at the event and that, later in the evening, he approached DeCarlo after DeCarlo had made a "gesture" in his direction. Item 10, ¶ 4, and Exhibit A. At that time, DeCarlo was standing under a tent watching a band play with his back facing Rankin as Rankin approached him. *Id.* at ¶ 4. Apparently, Rankin pushed him on the shoulder in an attempt to gain his attention. Id. However, the force of Rankin's push caused DeCarlo to spin around quickly, and his feet became entangled as he fell to the ground. *Id.*[2] As a result of the fall, DeCarlo suffered a broken ankle. Item 14, Exhibit E. Nationwide claims that it was first notified of the incident on June 23, 1998. Item 14, p. 8.[3]

Following the incident, DeCarlo filed a criminal complaint against Rankin claiming that Rankin had intentionally assaulted him. Item 14, Exhibit C. However, after Rankin paid DeCarlo $1,000 in restitution, the criminal charges were adjourned for six months in contemplation of dismissal. Item 14, Exhibits F, G, and H, p. 7. On August 27, 1998, Terrence Higgins, DeCarlo's attorney, sent a letter to Ms. Klein, Nationwide's claims adjuster, which noted that Nationwide had previously been advised of DeCarlo's injuries. *Id.,* Exhibit E. Further, Higgins wrote that these same injuries were "carelessly and recklessly" caused by Mr. Rankin. *Id.* Subsequently, on December 10, 1998, DeCarlo filed a civil complaint against Rankin in New York State Supreme Court, Niagara County. *Id.,* Exhibit K. In his complaint, DeCarlo alleges, *inter alia,* that the injuries he suffered as a result of the incident were due to the "the negligence of [Rankin] ... in carelessly and recklessly contacting [DeCarlo] ...." Item 11, Exhibit B.

### II. Nationwide's Disclaimers of Coverage

Rankin's tenant insurance policy with Nationwide, which was effective at the time of the incident, provides:

COVERAGE E—PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property....

Item 14, Exhibit B, p. G1 (emphasis in original). Furthermore, the policy excludes coverage for injuries "caused intentionally by or at the direction of an **insured,** including will-

---

1. DeCarlo filed a motion to intervene in this action, pursuant to Fed.R.Civ.P. 24. Item 20. In an order dated November 6, 2000, this court denied the motion. Item 27.

2. Rankin's affidavit regarding the incident differs somewhat from the account he originally offered in a meeting with a Nationwide claims adjuster, Cynthia Klein, on October 27,1998. *See* Item 14, Exhibit H, pp. 4–6. During the meeting with Ms. Klein, Rankin claimed that DeCarlo "might" have said something to his girlfriend upon their first meeting and that he might have grabbed

DeCarlo's shoulder to "confront" him regarding what was said, thereby causing DeCarlo to fall and suffer injuries. *Id.* Exhibit H.

3. Nationwide does not provide any evidence or documentation which demonstrates how it was first notified about the incident. Regardless, as the record is devoid of any other evidence which establishes when Nationwide first learned of the accident, the court accepts Nationwide's submission via affidavit that it first became aware of the incident on June 23,1998.

ful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct...." *Id.* at Exhibit B, p. H1 (emphasis in original). The policy also excludes coverage for an insured's acts or omissions which are criminal in nature. *Id.*

On October 30, 1998, four months after Nationwide was allegedly notified of the incident and two months after DeCarlo's attorney provided Nationwide with DeCarlo's medical records, a Nationwide claims representative sent a letter to Rankin which explained that Nationwide had been investigating the incident under a "[r]eservation of [r]ights" and that the insurer was disclaiming coverage for Rankin's involvement in the incident. Item 14, Exhibit I. The adjuster's letter advised that Nationwide considered Rankin's actions intentional in nature and therefore not covered by his policy.

The letter also advised that regardless of whether the criminal charges against Rankin were subsequently dismissed, "willful acts such as this which are criminal in nature are excluded from coverage under the ... policy ... [and that] exclusion applies regardless of whether you were charged with or convicted of a crime." *Id.*, Exhibit I.

Having received a copy of the complaint in the underlying action on December 28, 1998, Nationwide sent a second letter (dated January 6, 1999) to Rankin reiterating its disclaimer of coverage for the incident. Item 14, Exhibit L. On March 24, 1999, DeCarlo moved for a default judgment against Rankin in the underlying action alleging, *inter alia*, that Nationwide had improperly disclaimed coverage and indemnity for Rankin[4]. *See* Item 14, Exhibit M, ¶ 5.

In a third disclaimer letter sent to Rankin on April 28, 1999, Nationwide again restated its position that it was bound neither to indemnify nor defend Rankin in the civil claim filed by DeCarlo. Item 15. However, the letter further informed Rankin that "in the interest of protecting your rights at the present time, Nationwide has retained the

law firm of O'Shea, Reynolds and Cummings ["O'Shea, Reynolds"] to defend you in this matter." *Id.* Furthermore, the letter advised Rankin that "it would be in you [sic] best interest not to discuss the case with anyone except a representative of this company or an attorney from [O'Shea, Reynolds]." *Id.*

### III. Nationwide's Declaratory Judgment Action

On September 7, 1999, Nationwide filed a complaint in federal district court seeking a judicial declaration pursuant to 28 U.S.C. § 2201 that it does not owe coverage to Rankin in relation to the incident. Item 1. Although Rankin was served with a summons in the declaratory judgment action, Item 14, Exhibit N, neither of his personal attorneys, David Caywood and Thomas Restaino, nor attorneys from O'Shea, Reynolds were provided with a copy of the complaint. After receiving no response from Rankin regarding the declaratory judgment action, Nationwide applied for a default against Rankin on November 30, 1999, pursuant to Fed.R.Civ.P. 12 and 55(a). *Id.*, Exhibit O.[5]

Following the entry of default by the District Court Clerk, Nationwide moved for a default judgment against Rankin which was granted by this court on January 12, 2000. Item 8. Subsequently, a Nationwide claims representative sent a fourth letter to Rankin which stated:

As you are aware, Nationwide Insurance *was defending* you under a reservation of rights under your homeowners policy .... It was brought to my attention that a [d]eclaratory [j]udgment [a]ction was brought against you in Federal Court ... [and] I was informed that a default judgment was taken and and [sic][o]rder entered [against you] regarding this action.

As a result, Nationwide ... *no longer* owes you a defense or indemnification relative to the matter of DeCarlo vs Rankin. *As of*

---

4. On March 8, 2000, an order was filed in the New York State Supreme Court, Niagara County, in the underlying action, awarding DeCarlo summary judgment on the issue of Rankin's liability. Item 24, Exhibit A.

5. Pursuant to the summons issued on August 24, 1999, Rankin's time to appear, plead, or otherwise respond expired on September 19, 1999. Item 14, Exhibit N.

*February 04, 2000, we have discontinued our obligation* to provide defense and indemnification under the ... policy.

Item 14, Exhibit U (emphasis added).

Although a review of the record reveals that Rankin did not attempt to respond to letters from Nationwide or the legal actions commenced against him in relation to the incident, Rankin maintains that his failure to respond was due to his failure to understand the legal proceedings against him and his mistaken impression that O'Shea, Reynolds' attorneys were prepared to handle all matters relative to the incident. Specifically, Rankin maintains that "he did not understand the [letters]" sent to him by Nationwide "or their significance." Item 19, ¶ 4. Moreover, Rankin maintains that lawyers from O'Shea, Reynolds advised him "to talk to no one or do anything regarding this matter unless they (O'Shea, Reynolds and Cummings) contacted and advised [Rankin] ..." and "that if [Rankin] needed to do anything ... regarding this accident, the lawyers [from O'Shea, Reynolds] *would be in contact with [him]*." *Id.*, ¶¶ 5 and 6 (emphasis added).

### DISCUSSION

### I. The Standard for Vacatur of Default or Default Judgment

Federal Rule of Civil Procedure 55(c), which governs the setting aside of defaults, provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

The decision whether to grant a motion to set aside a default or default judgment is fully within the discretion of the district court judge, as he or she is most familiar with the circumstances of the case and is in the best position to evaluate the credibility and good faith of the parties. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir.1991); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). The scope of the district court's discretion in the default context is "a reflection of our oft-stated preference for resolving disputes on

the merits." *Enron Oil Corp.*, 10 F.3d at 95 (citations omitted). Such discretion, however, is not unlimited: "[the Second Circuit has] reversed its exercise, even where the abuse [of discretion] was not glaring." *Id.* at 95 *(citing cases )*. For these reasons, "an understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case." *Id.* at 96. Accordingly, where doubt exists regarding whether default should be vacated or granted, the doubt should be resolved in favor of the party in default. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981) ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits.").

Where, as in this case, a default judgment has been ordered by the court, as opposed to a default entered by the Court Clerk, the court must also look to the more stringent standards of Rule 60(b) to set aside the judgment. *See American Alliance Insurance Co., Ltd. v. Eagle Insurance Co.*, 92 F.3d 57, 59 (2d Cir.1996) ("A motion to vacate a default [under Rule 55(c) ] is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment."). Fed.R.Civ.P. 60(b) states:

On a motion and upon such terms that are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of judgment.

Moreover, when considering whether the requisite good cause exists so as to vacate the entry of default or a default judgment, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1077 (2d Cir.1995). It is well settled in this jurisdiction that such criteria must include: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is present-

ed. *Gucci America, Inc., v. Gold Center Jewelry*, 158 F.3d 631, 634 (2d Cir.1998); *Enron Oil Corp.*, 10 F.3d at 96. Other relevant equitable factors may also be considered, including whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. *Enron Oil Corp.*, 10 F.3d at 96. "Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment ... because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Id.*

## II. Rankin's Motion to Vacate the Default Judgment

### A. Was Rankin's Default Willful?

██ As the Second Circuit has noted, a finding of willfulness under the default judgment standard of mistake, inadvertence and excusable neglect does not include "careless" or "negligent" errors by the defaulting party. *American Alliance*, 92 F.3d at 61. In that case, the Second Circuit concluded that a default precipitated by a filing mistake on the part of defendant's in-house counsel was not "willful" under the Rule 60(b)(1) standard. *Id.* In reaching this conclusion, the court noted that although defendant's "grossly negligent" conduct "weigh[ed] somewhat against granting relief," vacatur of default was still appropriate as the conduct was not willful, deliberate, or evidence of bad faith. *Id.*

██ Moreover, the Second Circuit has clarified that "the analysis in *American Alliance* did not intend to suggest that a finding of bad faith is a necessary predicate to concluding that a defendant acted 'willfully' for the purposes of Rule 60(b)(1)." *Gucci America, Inc.*, 158 F.3d at 635. Rather, a finding that a defendant has defaulted deliberately is

sufficient to establish willfulness under Rule 60(b). *Id.* Accordingly, this court is required to review the record to determine whether Rankin's default was willful or deliberate, thereby warranting default, or whether it was due to an excusable, negligent error, thereby warranting vacatur pursuant to Rule 60(b).[6]

A review of the record reveals that Rankin's default should be vacated because it falls short of the deliberate standard for willfulness contemplated by the Second Circuit in *American Alliance* and other decisions. Over the course of seven months, Rankin received three letters from Nationwide purporting to disclaim coverage for his involvement in the incident with DeCarlo— *i.e.*, Nationwide's letters dated October 28, 1998, January 6, 1999, and April 28, 1999. Item 14, Exhibits I and L; Item 15. Although each letter clearly stated that Nationwide was proceeding under a reservation of rights and disclaiming coverage regarding the incident between Rankin and DeCarlo, it is apparent that the letters may have created an impression in Rankin that the O'Shea, Reynolds attorneys would be handling all matters relevant to the underlying claim *and* the declaratory judgment action. For example, the third letter informed Rankin that Nationwide had retained O'Shea, Reynolds to represent him in the underlying action and that he was to communicate only with Nationwide or O'Shea, Reynolds concerning the matter. Item 15. Rankin further avers that attorneys at O'Shea, Reynolds informed him that he was to discuss the case only with O'Shea, Reynolds' lawyers and that those lawyers would contact Rankin if he needed to take any action in regard to the case. Item 19, ¶¶ 5 and 6. Taken together with other correspondence Nationwide sent Rankin, these facts sufficiently substantiate Rankin's contention that he mistakenly "believed that [he] did not need to do anything regarding the papers [he] received...." Item 19, ¶ 7.[7]

---

**6.** As the Second Circuit noted in *Gucci America*, its analysis in *American Alliance* was meant "to contrast defaults caused by negligence, which may in some cases be excusable [under the Rule 60(b) standard], with defaults resulting from deliberate conduct, which are not excusable." *Gucci America, Inc.*, 158 F.3d at 635.

**7.** For example, the fourth letter sent to Rankin by Nationwide, which was sent after this court had granted the default judgment, noted that Nationwide had been defending Rankin under a reservation of rights. *See* Item 14, Exhibit U. Because Nationwide clearly created the impression that it would be defending Rankin, and the

Accordingly, Rankin was not acting in a manner that could be characterized as willful, thereby warranting default. *See, e.g., Action S.A*, 951 F.2d at 507 (upholding default judgment where defendant chose not to appear in the action because he faced possible indictment upon return to New York); *Gucci America, Inc.*, 158 F.3d at 635 (upholding default judgment where district court had specifically found that defendants deliberately decided not to respond to plaintiff's damages application). Rather, his mistake in concluding that the O'Shea, Reynolds attorneys would handle the matter is more accurately characterized as an excusable, negligent error under the Rule 60(b) standard of mistake, inadvertence, or excusable neglect. *See, e.g., Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1078 (2d Cir.1995) (vacating default judgment where mortgagee incorrectly assumed that its answer was to be filed after its removal petition was determined and because it received conflicting information from the Clerk's Office regarding the docket number assigned to the case).

Nationwide argues that Rankin's "excuse" for not responding to the declaratory judgment complaint or default—that he mistakenly believed that O'Shea Reynolds would be handling the matter—should be rejected because it "rings hollow." Item 13, p. 11. In support of this argument, Nationwide emphasizes that: Rankin never sent O'Shea, Reynolds the summons and complaint in the declaratory judgment action; Rankin never informed O'Shea, Reynolds about the federal action; Rankin never asked for their assis-

tance in defending against the action; and Rankin never spoke with any other attorney about the action. *See* Item 13, pp. 10–11.[8]

However, the court finds this argument unpersuasive since it creates, at best, some doubt as to the reasonableness of Rankin's excuse. As the Second Circuit has explained, a "subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *American Alliance Ins. Co.*, 92 F.3d at 61. Again, Rankin maintains that he did not understand the letters Nationwide sent to him regarding the DeCarlo matter. Further, he contends that he was under the belief that O'Shea, Reynolds' attorneys would be handling all matters arising out of the incident with DeCarlo and that they would be in contact with him if he needed to act with regard to the legal action taken against him. Thus, although the court disapproves of Rankin's actions or lack thereof in the declaratory action commenced against him, the record tends to show that Rankin reasonably believed that the O'Shea, Reynolds attorneys would be handling the matter.[9]

Furthermore, although Nationwide's argument may create some doubt as to whether vacatur should be granted, the default standard requires that those doubts be resolved in favor of Rankin. *See Enron Oil Corp.*, 10 F.3d at 98 (holding that when doubt exists as to whether a default should be set aside, those doubts should be resolved in favor of the defaulting party). Accordingly, the court finds that Rankin's default was not willful.

---

lawyers Nationwide hired to defend Rankin allegedly told him that they would contact Rankin if any action needed to be taken concerning the matter, it is possible that Rankin mistakenly believed that those same lawyers would be handling the default entered against him.

8. In its memorandum in opposition to vacatur, Nationwide asserts that "[a]bsent any sworn testimony from Rankin which corroborates ... [his excuse that he believed O'Shea would be handling the declaratory judgment matter], it should be rejected outright." Item 13, p. 10. However, subsequent to the filing of Nationwide's motion, Rankin submitted an affidavit in which he avers that O'Shea, Reynolds' attorneys had advised him not to act in relation to the DeCarlo matter unless they specifically instructed him to do so. Item 19, ¶¶ 5–7.

9. The court declines to inquire whether Rankin's default was both willful and reasonable, since settled law only requires courts to inquire into the defaulting party's subjective willfulness when determining whether the party's neglect in defaulting is excusable. Here, Rankin's mistake is understandable in light of the complex nature of the insurance litigation in which he is involved and the fact that he is a lay person whose misunderstanding of the legal proceedings taken against him is more excusable than an attorney's misunderstanding. *Cf. D'Orange v. Feely*, 101 F.3d 1393, 1996 WL 446254 at **3 (2d Cir.1996) (unpublished opinion) (upholding default judgment where an attorney failed to respond to a complaint because of the confusing nature in which he was served).

## B. Will Vacating the Default Prejudice Nationwide?

Nationwide cannot claim, nor does it attempt to, that it will suffer any prejudice if the default judgment is vacated.[10] If it were to do so, Nationwide could at best claim that vacatur will only cause further delay in prosecuting its declaratory judgment action. However, one year and four months have elapsed since Nationwide filed its complaint. Furthermore, "delay standing alone does not establish prejudice." *Enron,* 10 F.3d at 98 (citing *Davis v. Musler,* 713 F.2d 907, 913 (2d Cir.1983)). As Rankin aptly notes, Nationwide will still be entitled to pursue a judgment on the merits after a grant of vacatur. *See* Item 10, ¶ 41. As such, no prejudice will befall Nationwide if the default judgment is vacated.

## C. Does Rankin Present a Meritorious Defense?

The Second Circuit has clearly held that "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.,* 10 F.3d at 98 (citing *Sony Corp. v. Elm State Electronics, Inc.,* 800 F.2d 317, 320–21 (2d Cir.1986)). The question courts must ask is not whether it is likely that the defendant will prevail in presenting a defense. Rather, the establishment of a meritorious defense depends on "whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* at 98 (citations omitted). The present record provides sufficient evidence of a meritorious defense on Rankin's behalf.

In order to establish a meritorious defense to Nationwide's declaratory judgment action, Rankin must provide evidence which establishes that Nationwide owes him coverage under his policy. Specifically, Rankin must submit evidence that his actions relative to the DeCarlo incident were an occurrence under his policy, rather than an intentional or "foreseeable" act. On this count, Rankin states in an affidavit that he pushed DeCarlo's shoulder harder than he intended, mis-

judging his contact with him due to his drinking and carelessness. *See* Item 10, Exhibit A. Also, Rankin avers that he "did not intend to cause Mr. DeCarlo to twist his feet or fall to the ground, nor did [he] intend to injure or harm [DeCarlo] ...." *Id.* Exhibit A. Moreover, Rankin states that he had no expectation that his actions would cause the injuries that DeCarlo suffered. *Id.* If proven at trial, these statements would be sufficient to establish a meritorious defense to Nationwide's claim that it is not obligated to provide coverage.

Furthermore, Rankin argues that Nationwide did not disclaim coverage within a reasonable time period after being informed of the altercation between Rankin and DeCarlo. This claim may also present a meritorious defense to Nationwide's declaratory judgment action. New York State Insurance Law states that, in order to disclaim coverage or deny liability for an accident, an insurer "shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y.Ins.Law § 3420(d) (McKinney 1985). Under New York law, the question of whether an insurer has notified an insured of disclaimer within a reasonable time period is a question of fact which depends on all the facts and circumstances surrounding any delays in disclaimer. *See Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 541, 389 N.E.2d 1061 (1979). However, the New York State Court of Appeals has also found that "[w]here ... there is absolutely no explanation for the delay provided by the insurer, a delay of two months is, as a matter of law, unreasonable." *Id.*

Here, Nationwide did not send a written disclaimer to Rankin until four months after it was first notified of the May 16, 1998 incident. Although such facts may weigh against Nationwide, "a ... delay [in disclaiming coverage] may often be easily justified...." *Id.* The first disclaimer letter notes that Rankin was made aware from

---

10. In its brief in opposition to Rankin's motion for vacatur, Nationwide fails to argue that vacatur will prejudice its declaratory judgment claim.

*See* Item 13, pp. 6–12 (discussing only the willfulness of Rankin's default and whether Rankin can establish a meritorious defense).

"previous conversations" that Nationwide was investigating the matter under a reservation of rights. Item 14, Exhibit I. Such evidence leaves open the question of Nationwide's reasonableness in delaying the disclaimer of coverage. Therefore, this case presents, *de minimis,* a question of fact regarding the reasonableness of the delay in Nationwide's disclaimer of coverage.[11] In any event, Rankin's defense cannot be determined at the default judgment stage. Rather, he must present a defense that " 'is good at law so as to give the factfinder some determination to make.' " *American Alliance,* 92 F.3d at 61 (2d Cir.1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir.1988)). Because Rankin raises a question of fact as to whether Nationwide reasonably disclaimed coverage in a timely manner, this question will be taken up later.

Accordingly, Rankin presents two meritorious defenses that, taken together with the other good cause factors under Rule 60(b), warrant vacatur of the default judgment.

### III. Rankin's Other Claims

Rankin also seeks permission to file a complaint against Nationwide for its "fraudulent and improper conduct, and ... [for] punitive damages." Item 10, ¶ 35. In addition, Rankin seeks summary judgment. *Id.* at ¶ 34. However, these allegations and claims are simply set forth in the attorney's affidavit. *Id.,* ¶ 35. This order directs defendant to file an answer. At that time, he may also assert a counterclaim. The court will refrain from ruling on any application for attorney fees until the conclusion of this action. If Rankin seeks summary judgment, he will have to submit a proper application pursuant to Fed. R.Civ.P. 56.

### CONCLUSION

Because Rankin has presented sufficient evidence to support a finding that there is

good cause to vacate the default judgment entered against him, such relief is granted. He is directed to file an answer to Nationwide's complaint within twenty (20) days of this order and may also file a counterclaim. Presently, Rankin's other requests for relief are denied. The court will have a telephone conference with counsel on April 6, 2001, at 2 p.m.

So ordered.

---

11. As noted earlier, the record does not reveal any written documentation beyond Nationwide's affidavit to substantiate its claim that it first became aware of the incident on June 23, 1998, four months before it first disclaimed coverage. The earliest written documentation in the record which may be construed as a notification of the incident comes in the form of the letter from DeCarlo's attorney which Nationwide received on August 31, 1998, two months before the first disclaimer was sent to Rankin. *See* Item 14, Exhibit E. Regardless, since the first letter sent to Rankin reveals that there was some verbal communication between the parties about the possibility of disclaimer, question of fact remain about the alleged disclaimer.